# SEIBEL-SUESSDORF COPPER & IRON MANU-
## FACTURING COMPANY et al., Appellants, v.
## MANUFACTURERS' RAILWAY COMPANY.

**Division Two, July 19, 1910.**

1. **OFFER OF EVIDENCE: Exclusion: General.** A refusal of a mere general offer of evidence to show that an ordinance under which defendant claims the right to build a railway in a public street was invalid, being merely an expression of a desire to introduce evidence for a certain purpose, is not reversible error.

2. ————: **In Rebuttal.** Rebuttal testimony is addressed to evidence produced by the opposite party; and where defendant had not introduced the ordinance in evidence, but that had been done by the plaintiff, plaintiff's offer, in rebuttal, of evidence to show the ordinance invalid, is properly excluded.

3. ————: ————: **Cumulative: As of Right.** A plaintiff is not entitled, as of right, to put in, in rebuttal, evidence merely cumulative or confirmatory of that already put in by him in his original case. And where plaintiff had, in chief, put in evidence to show that the ordinance under which defendant asserted its right to construct the railway in the street was invalid, the trial court cannot be held guilty of abusing its discretion in refusing to permit plaintiff, in rebuttal, to put in other evidence to show its invalidity, merely because he had, in his reply, for the first time, pleaded the invalidity of the ordinance.

4. **ASSESSOR'S PLATS: To Show Ownership.** The assessor's plats required by statute to be kept, made on June 1, 1904, are not evidence of the ownership of property along the street at the time the ordinance, granting to defendant permission to lay a railroad in the street, was introduced or passed in the spring of 1905. They are kept to enable the officials "to ascertain what lands are taxable"; but are not evidence of title in suits between private persons.

5. **DELEGATION OF LEGISLATIVE POWER.** A grant of legislative power, complete within itself, and to become operative only upon the happening of a prescribed condition, is not invalid. So where the city granted to defendant permission to construct a railroad in designated streets, and authorized it to construct and maintain switch tracks on and across

them whenever the board of public improvement should deem such construction to be practicable, the grant is valid and not a delegation of legislative power to the board, but only a prescription of the condition upon which defendant might exercise the grant.

6. **RAILROAD AND STREET:** New Servitude. It is lawful for a city to authorize the construction and operation of a surface railroad in a street by a .private corporation, and such use of the street is not a new servitude.

7. ————: Monopoly: Injunction. The laying of a single track of a steam railroad in the middle of a street, authorized by ordinance, will not be enjoined as a nuisance, where the distance from either rail to the curb at the narrowest part of the street is ten feet and six inches, and there is no evidence that the abutting property of any plaintiff will be depreciated by reason of said track and the operation of trains thereon, and none that access to plaintiff's ·property from the street will be destroyed or unreasonably interfered with.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey*, Judge.

AFFIRMED.

*Jas. P. Kerr, N. P. Zimmer* and *Wiget & Hamilton* for appellants.

(1) Equity cases are heard *de novo* in the Supreme Court, and the court will review the whole case on the evidence. McElroy v. Maxwell, 101 Mo. 294; Benne v. Schnecko, 100 Mo. 250; Blount v. Spratt, 113 Mo. 48; Lins v. Lenhardt, 127 Mo. 271; Courtney v. Blackwell, 150 Mo. 245. (2) By the findings, judgment and decree of the court as rendered and entered, plaintiffs would be deprived of their private property; and private property of plaintiffs would be damaged for public use, without just compensation, contrary to article 2, section 20, of the Constitution of Missouri, no compensation having been ascertained by a jury or board of commissioners in the manner prescribed by law. (3) By the decree of the court in the enforcement thereof, plaintiffs would be deprived of property

without due process of law, and their private property
taken for public use without just compensation, con-
trary to the Fifth and Fourteenth Amendments to the
Constitution of the United States.   (4) The ordinance
is in violation of the Fourteenth Amendment.   Ex
parte Quong Woo, 13 Fed. 229; Yick Wo v. Hopkins,
118 U. S. 356; Ex parte Sing Lee, 31 Pac. (Cal.) 245.
(5) Defendant's answer is an express aider to plain-
tiffs' petition (if the allegation that "defendant has no
right or lawful authority to do any of the acts herein
set forth," be regarded as a conclusion of law), de-
fendant having chosen in its answer to supply the de-
fect (if any) of the petition by putting in issue itself
the fact of the validity of the ordinance.   Allen v.
Chouteau, 102 Mo. 318; Garth v. Caldwell, 72 Mo. 629;
Hughes v. Carson, 90 Mo. 402; Grace v. Nesbit, 109
Mo. 15; Donaldson v. Butler County, 98 Mo. 163;
Stivers v. Horne, 62 Mo. 473; Henry v. Sneed,
99 Mo. 407; Bliss on Code Pleading (2 Ed.),
sec. 437 *et seq.;* Pomeroy's Code Remedies (3 Ed.),
sec. 579; Beckman v. Insurance Co., 49 Mo.
App. 607; Dillard v. McClure, 64 Mo. App. 488; Mc-
Allister v. Walker, 69 Mo. App. 496; Heffernan v.
Supreme Council, 40 Mo. App. 605; Price v. Protection
Co., 77 Mo. App. 236; Jackson v. Powell, 110 Mo. App.
249.   (6) The court erred in ruling that plaintiffs'
reply to defendant's answer, and the facts alleged in
said reply, were a departure in pleading from plain-
tiffs' petition, and the cause of action therein stated,
and that therefore plaintiffs could not introduce evi-
dence under their pleadings attacking the validity of
the city ordinance under which defendant claims the
right to build the proposed railroad.   Mortland v. Hol-
ton, 44 Mo. 64; Courtney v. Blackwell, 150 Mo. 278;
Smith v. Woodmen, 179 Mo. 119; Chemical Co. v.
Lackawanna, 70 Mo. App. 280; Rich v. Donovan, 81
Mo. App. 184; Gould's Pleading (5 Ed.), sec. 78; 1
Chitty's Pleading, p. 674; Phillip's Code Pleading, pp.

254, 255; Insurance Co. v. Nexon, 84 Ind. 350; Railroad v. Cahill, 8 Colo. App. 154; Johnson v. Cummings, 12 Colo. App. 23.   (7) The court. erred in ruling at the trial that even if there was a departure in pleading new matter in the reply, the same was not waived by defendant's failure to take advantage thereof by motion to strike out or by special demurrer, and that therefore plaintiffs could not introduce evidence under their pleadings attacking the validity of the city ordinance under which defendant claims the right to build the proposed railroad.   Philibert v. Burch, 4 Mo. App. 470; Ricketts v. Hart, 73 Mo. App. 654; Bliss, Code Pleading (3 Ed.), sec. 396, p. 607; 1 Chitty on Pleading (16 Am. Ed.), pp. 814, 815; Kannaugh v. Mining Co., 16 Colo. 344; Trust Co. v. Simpson, 5 Colo. App. 30; Barboux v. Backer, 4 Met. (Ky.) 48; Ankeny v. Clark, 148 U. S. 345; New v. Wambach, 42 Ind. 456; 6 Cyc. 468-9; Keay v. Goodwin, 16 Mass. 1.   (8) The municipal assembly cannot delegate its public powers and trusts.   The city ordinance under which the defendant claims the right to build the proposed road is void, because section three contains a delegation of authority by the municipal assembly to the board of public improvements.   1 Dillon, Mun. Corp. (4 Ed.), pp. 154 and 156; Cooley, Const. Lim. (5 Ed.), 249; Ruggles v. Collier, 43 Mo. 353; Sheehan v. Gleason, 46 Mo. 100; Murphy v. Clemens, 43 Mo. 395; Matthews v. Alexandria, 68 Mo. 115; St. Louis v. Russell, 116 Mo. 248; St. Louis v. Heitzeburg, 141 Mo. 375; Tregman v. Chicago, 78 Ill. 405.   (9) The other provisions of the ordinance are so dependent on, and interwoven with, section three, that if the latter be void the entire ordinance is thereby invalidated.   Kirkwood v. Meramec Highlands Co., 94 Mo. App. 645; Warren v. Mayor, 2 Gray (Mass.) 84; State, ex rel. v. Perry Co., 5 Oh. St. 507; Employers' Liability Case, 207 U. S. 463; Slawson v. Racine, 13 Wis. 398; New Orleans v. Morgan, 1 La. Ann. 116.   (10) The power of municipal authorities

to grant a railroad company the right to lay its tracks along the streets is not absolute. They cannot do so if the operation of the railroad will destroy the street as a public thoroughfare. Knapp v. Railroad, 126 Mo. 35; Lockwood v. Railroad, 122 Mo. 86; Dubach v. Railroad, 89 Mo. 483; Brown v. Railroad, 137 Mo. 536; Swinhart v. Railroad, 207 Mo. 435; Pepper v. Railroad, 113 Tenn. 53. (11) Neither can the municipal authority grant the power to a railroad company of such use of a street as will destroy or unreasonably interfere with the right of access to or egress from one's property. Lockwood v. Railroad, 122 Mo. 86; Lackland v. Railroad, 31 Mo. 181; Pepper v. Railroad, 113 Tenn. 53; Swinhart v. Railroad, 207 Mo. 435; Schopp v. St. Louis, 117 Mo. 131; Knapp v. Railroad, 126 Mo. 35; Corby v. Railroad, 150 Mo. 457; DeGeofroy v. Railroad, 179 Mo. 722; Loth v. Theatre Co., 197 Mo. 347. (12) The right of the plaintiffs to the use of the street adjoining their lots is as much property as the lots themselves. Lackland v. Railroad, 31 Mo. 180; Householder v. Kansas City, 83 Mo. 488; Sheehy v. Railroad, 94 Mo. 574; Chicago v. Taylor, 125 U. S. 165; Tate v. Railroad, 64 Mo. 149; Spencer v. Railroad, 120 Mo. 154; Heinrichs v. St. Louis, 125 Mo. 424; Christian v. St. Louis, 127 Mo. 115. (13) The court erred in excluding the plats produced in evidence by plaintiffs. 1 Greenleaf on Evidence (Lewis' Ed.), secs. 91 and 484; 2 Wigmore on Evidence, sec. 1218 *et seq.*, sec. 1640.

*Nagel & Kirby* and *Rassieur, Schnurmacher & Rassieur* for respondent.

(1) The objection to evidence seeking to attack the validity of the ordinances was properly sustained: (a) Because the offer of evidence was not specific or definite but in general terms and language merely. 9 Ency. Ev., pp. 165, 166; Railroad v. Hicks, 206 Ill. 318; Howard v. Coshow, 33 Mo. 118; Seibert v. Tiffany,

8 Mo. App. 36. (b) Because plaintiffs had themselves
shown, by witness Mockler, that the necessary written
consent of property-owners was filed with the council
prior to the final passage of the ordinance. (c) Be-
cause the action of the council was in the nature of a
judicial finding *in pais* that the necessary written con-
sent was before it. Railroad v. Cheetham, 58 Ill. App.
318; People v. Rochester, 21 Barb. 656. (d) Because
the offer was made in rebuttal, and, the ordinance not
having been offered in evidence by defendant, there
was nothing at the time before the court to rebut.
Glenn v. Stewart, 167 Mo. 584; Babcock v. Babcock, 46
Mo. 243. (e) Because, after offering to attack the ordi-
nance, plaintiffs themselves introduced and read it in
evidence. (2) Even though the lower court erred in ex-
cluding the evidence which was thus offered, as tend-
ing to affect the validity of the ordinance, this court
will not now reverse on that ground, because the offer
of proof was so broad and vague that it cannot be
determined from the record whether the evidence was
material. Bank v. Aull, 80 Mo. 199; State v. Martin,
124 Mo. 514; Morton v. Heidorn, 135 Mo. 608. (3) The
copies of the assessor's plats were inadmissible: (a)
Because they were neither certified nor verified copies.
(b) Because, between third persons, as here, the orig-
inal plats themselves would not have established owner-
ship or title, which was the purpose for which they were
offered; but at most would have shown merely to whom
the various lots of land were assessed. R. S. 1899, sec.
9169; Commonwealth v. Heffron, 102 Mass. 148; 10
Ency. Ev., p. 728. (c) Because the plats were made
as of June 1, 1904, and the ordinance was not introduced
in the municipal assembly until the spring of 1905;
therefore, even if the plats were evidence of title or
ownership, they would not have tended to show such
title or ownership in 1905. (d) However, no ruling
of the trial court on this subject could have been preju-
dicial to plaintiffs, since the plats, in point of fact, were

received in evidence in connection with the cross-examination of witness Edward Flad and are now a part of the record. (4) The ordinance does not delegate legislative power to the board of public improvements. Section 3 by its own terms authorizes defendant to construct and operate necessary switch tracks. Defendant's authority does not come from the board of public improvements, but from the ordinance itself; subject, however, to the right of the board, as an administrative body, to determine the practicability of construction, and thereby restrict or limit the exercise of the grant. State v. Thompson, 160 Mo. 333; St. Louis v. Mfg. Co., 139 Mo. 560; St. Louis v. Weitzel, 130 Mo. 600; Centralia v. Smith, 103 Mo. App. 439; 6 Am. and Eng. Ency. Law, 1029, 1031. But if section 3 of the ordinance were invalid, it would not affect the entire ordinance; the result would be merely to deprive defendant of the right to lay down and operate switch tracks. 1 Dillon's Mun. Corps. (4 Ed.), sec. 421; Railroad v. Railroad, 105 Mo. 577; Rockville v. Merchant, 60 Mo. App. 365; McQuillin's Mun. Corps., sec. 89. (5) The municipal authorities may authorize the laying of tracks at grade in the streets and other public places of a city, and may permit the operation of a railroad thereon by steam, electricity or other motive power; and such use will not be considered as a new or additional inconsistent servitude upon such streets or public places, provided merely that such public use of the highway shall not amount to a confiscation thereof by the railway company, or an unreasonable exclusion of the general public therefrom. Lackland v. Railroad, 31 Mo. 180; Porter v. Railroad, 33 Mo. 128; Mfg. Co. v. Railroad, 113 Mo. 308; Ruckert v. Railroad, 163 Mo. 260; DeGeofroy v. Railroad, 179 Mo. 698. (6) The extraordinary relief of injunction will not be granted a property-owner to restrain the operation of a railroad, because of interference with a particular way

of ingress or egress, if there be other reasonably con-
venient access to the property not interfered with.
Stephenson v. Railroad, 68 Mo. App. 624; Railroad v.
Cuykendall, 42 Kas. 234; Railroad v. Gamsich, 10 Kas.
552; Fearing v. Erwin, 55 N. Y. 486; Carth v. Berk-
shire, 11 Gray 26; Ingram v. Railroad, 38 Ia. 669; In
re Counsel, 50 N. H. 530; Letterloh v. Mayor, 15 Fla.
306; Railroad v. Prudden, 20 N. J. Eq. 530; Dodge v.
Railroad, 11 Atl. 751; Amelung v. Seekamp, 9 Gill.
& John. (Md.) 474. See, also, Gaus v. Railroad, 113
Mo. 309, where injunction was denied on facts almost
identical with those at bar.

FOX, J.—This is a proceeding in equity to enjoin
the defendant Railroad Company from laying down a
single track of standard gauge railway on Second
street, in the city of St. Louis, from Poplar street, on
the north, to Potomac street, on the south, a distance of
about two and a half miles.

From Poplar street, southwardly, to Convent
street, a distance of 2275 feet, Second street has a
width, between building lines, of 38 feet and 6 inches,
with sidewalks on each side of 6 feet and 6 inches, leav-
ing a roadway between curbs of 25 feet and 6 inches.
From Convent street to Potomac street, the southern
terminus of the proposed line, Second street has a
width of 60 feet.

Plaintiffs are abutting property-owners on Second
street, along the proposed route. The properties of
plaintiffs, the Seibel-Suessdorf Copper and Iron Mfg.
Co., Frederick Suessdorf, and Charlotte Riechmann
front on the narrow portion of Second street, where
the width between curbs is about 25½ feet. The prop-
erty of the Seibel-Suessdorf Copper and Iron Mfg. Co.
is on the northwest corner of Second and Lombard
streets, with access to both of said streets, has a front-
age of eighty-four feet, and is improved with a three-
story factory building worth twenty thousand dollars.
Immediately north of and adjoining the property of

said company, is the property of Frederick Suessdorf, the same consisting of a lot fronting 26 feet and 6 inches on Second street, and improved with a three-story building, the front part of the building being used as a saloon and boarding house, while the rear half is used in connection with the business of the plaintiff manufacturing company, of which company plaintiff Frederick Suessdorf is secretary. The improvements on this property are worth about forty-five hundred dollars. The property of plaintiff Charlotte Riechmann has a frontage of fifty-six feet on the east side of Second street, between Lombard street and Chouteau avenue, and runs through to Risley street, which abuts it on the east. This property is improved with two-story brick buildings, used as a saloon, boarding house and residence, all valued at five thousand dollars. All the other plaintiffs are interested, as owners, in four different lots fronting on Second street, south of Convent street, where the street has a width of sixty feet.

The defendant, Manufacturers' Railway Company, is a railway corporation, organized under the laws of Missouri, and was, by an ordinance passed by the Municipal Assembly of the city of St. Louis, and approved April 8, 1905, granted permission to construct, maintain and operate a single-track railway in certain streets, including Second street, between the points above mentioned. Section 3 of the ordinance also authorizes said company to construct, maintain and operate switch tracks at such places as it may deem necessary in the operation of the track authorized by the ordinance, "provided that in the opinion of the Board of Public Improvements the construction of such switch tracks is practicable."

This bill was filed a few days after the approval of the ordinance. It charges, in effect, that plaintiffs are owners of real estate along the line of, and abutting on, Second street, and fronting the line of railroad track above referred to; and, after stating the width

of Second street and the general character of the improvements thereon, charges that defendant is threatening to, and will, unless restrained by order of the court, "build and operate a standard gauge railroad, with a track four feet eight inches between rails, for the purpose of carrying freight in cars propelled by steam locomotives, as a common carrier, from and commencing at a point in the center line of the track of the St. Louis, Iron Mountain and Southern Railway on Poplar street," to the southern terminal point above referred to, and that defendant "is threatening, and about to, and will, enter upon said Second street, and will tear up the pavement thereon all along the line of its proposed track, and thus stop all traffic by vehicles on said street while constructing said railway. And that defendant is threatening to, and will, unless restrained by the order of this court, stand its cars on Second street, and erect and maintain gates at all street crossings on both sides of said track, and will lower said gates at the approach of all trains." Plaintiffs make no reference in the bill to the ordinance passed by the Municipal Assembly authorizing the defendant to construct, maintain and operate said single-track railway and switch tracks, but simply say "that defendant has no right or lawful authority to do any of the acts herein set forth."

The bill further charges "that in the event said railroad shall be constructed and operated as hereinbefore set forth, the plaintiffs will suffer great, immediate, permanent and irreparable injury and damage, and that the traffic over and along said Second street will be greatly and unreasonably delayed and hindered, and that by reason of the frequent passing and stopping of trains and locomotives, and by reason of the standing of cars on said track, and the lack of space between said track and the sidewalks on said street, wagons used for the carriage of goods and merchandise will not be able to pass or go along Second

street, and no ordinary wheeled vehicle will be able safely to pass between the locomotive or train or cars of defendant and the sidewalks. That by the erection and maintenance and use of gates threatened as aforesaid, travel and traffic will be cut off between Second street and other highways and thoroughfares, and the use of said Second street by the owners of the property thereon will be destroyed on a great part of said street, as well as the use thereof by the public for the purpose for which it was originally condemned or dedicated. And said Second street as a highway will be subjected to a servitude different from and greater than that for which it was set apart, and the easement of the plaintiffs and the public over and along said highway will be trespassed upon, and the said acts threatened will constitute a public as well as a private nuisance to the plaintiffs and that the property of the plaintiffs and the value thereof will be greatly injured and depreciated. That thereby the buildings on said property, by reason of the proximity of the proposed track of defendant, and passing of its locomotives, will be in great danger of destruction by fire. That the noise and vibration caused by passing trains and locomotives will render the property of plaintiffs unfit for use as places of habitation. Plaintiffs state that unless the defendant be restrained and enjoined from doing the wrongful acts threatened as hereinbefore set forth, the plaintiffs will suffer great and irreparable injury and damage.''

By its answer defendant admits that it is a common carrier and railroad corporation, and avers that it claims the right to build and construct a standard gauge railroad, with a track four feet and eight inches between rails, along, over and upon the streets mentioned in the petition, and intends to operate such railroad under and by virtue of an ordinance of the city of St. Louis, entitled, ''An ordinance to authorize The Manufacturers' Railway Company to construct, main-

tain and operate its road or railway along Dorcas street and along and across intervening streets and alleys from First street to a point in city block No. 1412; along Eleventh street, between Pestalozzi and Lynch streets, and along Second street, from Potomac street to Poplar street, and across intervening streets and alleys,'' approved April 8, 1905.

The answer denies that defendant intends or threatens to stop, or will stop, traffic by vehicles on Second street while constructing its railway, or that it will in any manner stop or interfere with traffic of any kind on Second street, and denies that it intends or threatens to permit its locomotives or cars or trains of cars to stand on Second street so as to interfere with ordinary traffic thereon; denies that the erection and maintenance of gates at intersecting streets will destroy or interfere with traffic on Second street, or that Second street as a highway will be subject to a servitude different from or greater than that for which it was set apart, or that the easement of the plaintiffs or the public over and along Second street will be trespassed upon, or that defendant threatens or intends to do, or will do, any act of any kind which will constitute a nuisance, either public or private.

The answer avers that the route over which the ordinance authorizes defendant to construct and operate its line of railway is improved, in the main, with buildings which have become old and are no longer desirable for residence purposes, and that few business or manufacturing establishments exist along said route, and that instead of doing an injury or causing any depreciation to property along said route, and particularly along Second street, the construction and operation of said railway will produce the contrary result and will cause an enhancement in the value of property, and will not in any manner depreciate either the value or the use of the same. That, by the terms and provisions of the ordinance granting defendant the privilege to

lay tracks and operate its line of railway thereon, the rights of the public and of the plaintiffs are fully guarded and protected; that the city of St. Louis, through its public authorities, has reserved the right to supervise the laying of said tracks and the maintenance thereof; that the ordinance prohibits defendant from permitting any cars or trains of cars, when not in motion, to stand on its tracks for more than two minutes at any one time, and prohibits defendant from permitting its cars or trains of cars to stand or remain on or across any of the cross streets intersecting Second street, and provides for the erection and maintenance of gates at all intersecting streets, with a watchman, at the expense of defendant, to lower the same on the approach of trains and to raise same immediately after their passage.

Plaintiffs, in their reply, attack the validity of the ordinance by pleading that the route on and over which tracks are authorized to be laid is more than one mile in extent, and that no petition of land-owners, representing more than one-half the frontage of each mile, and fraction of a mile in excess of the whole mile, measuring from the initial point named in the ordinance, was ever filed with the authorities of the city of St. Louis, and that no consent of the majority of property-owners was ever given by such owners to the passage of such ordinance. Plaintiffs aver that the ordinance is also invalid on the ground that it delegates to the Board of Public Improvements the right to authorize defendant to construct, maintain and operate switch tracks. Further replying, plaintiffs deny that the route over which said ordinance purports to authorize defendant to construct and operate its line of railway is in the main improved with buildings which have become old and no longer desirable for residence purposes, and deny that the building and operation of said railway will result in or cause an enhancement in the value of the property along the line of said railway.

The testimony tended to prove that Second street, from Poplar to Convent street, was from 25 feet 6 inches to 25 feet 9 inches wide between curbs, and 42 feet 6 inches wide between building lines; that Second street, south of Convent street, was 36 feet wide between curbs and 60 feet wide between building lines. On the part of plaintiffs, the testimony was that railway cars ranged in width from 8 feet and 6 inches to 10 feet and 6 inches, and wagons and other vehicles, from 5 feet and 2 inches to 8 feet and 10 inches. Defendant's testimony, however, tended to show that the maximum width of railway cars was about 10 feet, and that the average width of stake wagons, used for heavy hauling, was about 7 1-2 feet.

Plaintiff Frank J. Wiget testified on the witness stand that he was familiar with Olive street, in the city of St. Louis, from Fourth street to Grand avenue; that it was a very heavily traveled street, with much traffic, and that there was a double-track street railway thereon, with cars running in each direction; that the same was true of Market street, between Fourth and Twenty-first streets.

Witness Edward Flad, a civil engineer, in the employ of the defendant, testified that the average width of Olive street, between curbs, was thirty-six feet; that the distance from the center of either track on that street to the curb was 12 feet and 5 inches, while the distance from the center of the proposed track on Second street to the curb was 12 feet and 10 inches; that, assuming a railroad car was 10 feet wide, and a street car 9 feet wide, there would be about the same space between the railroad car and the curb on Second street as between a street car and the curb on Olive street. This witness also testified that a wagon seven and a half feet wide could pass by a car ten feet wide, on the proposed railway, and leave a space of about nine inches between the car and wagon; that the space be-

tween cars on the track and the curb would be ample for ordinary traffic,. but not for very wide wagons.

According to the evidence, most of the buildings on Second street, between Poplar and Rutger streets, were old and dilapidated. Some of the buildings were used for manufactories, and a good many for saloons and boarding houses. Others were used for residences and stores.

T. A. Dooly, general superintendent of the American Car & Foundry Co., testified for plaintiff that the width of the standard box car or freight car, including projections, is 9 feet and 5 inches, and that the width of coal cars varies between 9 feet and 8 inches and 9 feet and 10 inches, including projections, but that there was no standard width for coal cars.

George F. Mockler, secretary of the city council, one branch of the Municipal Assembly of the city of St. Louis, called as a witness by plaintiffs, produced certain written consents to the passage of the ordinance in question. He testified that the council submitted all petitions for, and all remonstrances against, the ordinance to the president of the Board of Public Improvements, with a request that he make a calculation of the frontage of the property covered by the written consents filed in favor of the passage of the ordinance, and report the result to the railroad committee; that on March 20, 1905, the secretary of the Board of Public Improvements made report as follows:

"I hereby certify that since the last certificate from this office with reference to the number of front feet signed in favor of your bill for tracks on Second street, the additional signatures make the total number of front feet, as shown by the official plats of the city, in favor of your bill, 13,347, a majority of 8853 feet over the number not signed or non-committal, of 4944 feet, more than fifty per cent of the total frontage of property on Second street, between Potomac and Poplar streets."

The witness further testified that the ordinance received final action in the council on March 24, 1905, and was approved April 8, 1905; that some of the petitions or consents, about ten per cent in volume, witness could not find, as they had been handled by many people, and that said petitions or consents were in the council chamber the night the ordinance was finally considered and passed. Witness also testified that the president of the Board of Assessors was also asked to furnish information concerning the amount of property which was signed for in the petitions, and that the council received such information.

The only witness called by the defendant was Edward Flad, the substance of whose testimony is given above.

By way of rebuttal, plaintiffs offered to introduce evidence tending to establish the invalidity of the ordinance. This was refused, plaintiffs excepting to the ruling of the court. Thereafter, plaintiffs, with the court's permission, introduced in evidence a certified copy of the ordinance, whereupon the case was closed.

Upon the pleadings and proof the court found for the defendant, and entered up judgment dismissing plaintiffs' bill. In due season plaintiffs filed motion for a new trial, which was overruled, whereupon plaintiffs appealed.

## OPINION.

There are eight assignments of error, only four of which, however, are deemed of sufficient importance to be discussed by plaintiffs in their briefs.

### I.

The main point urged by plaintiffs is that the court erred in refusing them permission to introduce evidence attacking the validity of the ordinance.

This must have reference to the court's action in refusing to allow plaintiffs, at the close of defendant's case, to introduce, in rebuttal, some certain or uncer-

tain evidence for the purpose of showing that the ordinance was invalid. The offer was made in a most general way, and the court, addressing counsel, said: "I understand you propose now to offer evidence tending to establish the invalidity of the ordinance. That is your offer at this time? That evidence will be excluded."

Before passing on the point raised, we deem it well to refer to the pleadings and to the evidence introduced prior to plaintiffs' offer of said rebutting evidence. The petition is drawn on the theory that defendant, without any color of right, was about to enter upon Second street for the purpose of laying its tracks thereon, and so interfering with ordinary traffic. There is no averment that defendant claimed the right of entering upon the street pursuant to some permission which had been improperly granted. After setting forth the threatened acts of defendant, plaintiffs simply say "that defendant has no right or lawful authority to do any of the acts herein set forth," which allegation is a conclusion of law, and not a recital of any traversable fact. The answer denies that defendant is about to trespass on the highway, admits that it contemplates the laying of tracks on the streets mentioned in the petition, and avers that it claims the right to do so under and by authority of an ordinance of the city of St. Louis, approved April 8, 1905, granting it permission so to do. The replication charges that the ordinance thus referred to is invalid on the ground that the streets mentioned therein are more than one mile in extent, "and that no petition of land-owners, representing more than one-half the frontage of each mile, and of the fraction of a mile, in excess of a whole mile, measuring from the initial point named in said ordinance or in any petition, signed by the owners of land representing more than one-half the frontage of each mile, and of the fraction of a mile, along said line of railway through said streets, has ever been filed with

the authorities of the city of St. Louis, and aver that no consent by such required majority of property-owners has ever been given by the petition of owners of the land, as provided by section 1187, Revised Statutes of Missouri 1899.''

Upon the hearing, plaintiffs introduced as a witness George F. Mockler, secretary of the city council, for no other purpose, so far as we can see, than to prove that the ordinance was invalid, as averred. It developed, however, from the cross-examination of this witness, that, in point of fact, written petitions, consenting to the passage of the ordinance, were filed with the city council, and that the same were twice submitted by the council to the president of the Board of Public Improvements, with the request that he calculate and report to the council, or its railroad committee, the total frontage which was represented by such petitions, and that the secretary of said board, in response to such request for information, made the calculations and submitted the same to the council, and that a similar request was made of the president of the Board of Assessors, and reported on. The report of the secretary of the Board of Improvements was to the effect that petitions of land-owners, representing more than fifty per cent of the frontage of property along the line of the proposed railway, were filed in favor of the passage of the ordinance. It also appears from plaintiffs' evidence that said ordinance was passed by the council, after the house had acted thereon, and that it was thereafter, on April 8, 1905, approved by the mayor.

This showing having been made by plaintiffs, defendant did not introduce the ordinance, but merely offered the testimony of Edward Flad as to the width of Second street at various points along the line of road, and with reference to the width of locomotives, cars, wagons and other physical conditions, whereupon defendant rested its case. Plaintiffs, then, on the stage

of rebuttal, offered to show the invalidity of the ordinance, which offer was unaccompanied by any definite or specific statement of the nature of the proof, and there is nothing in the record to show that the evidence counsel had in mind, and desired to offer, would in any way tend to prove the invalidity of the ordinance.

We think, for various reasons, that the court did not err in excluding the evidence offered in rebuttal.

1. The offer of evidence was not specific or definite, but in the most general terms, and was merely the expression of a desire to introduce evidence for a certain purpose. "A mere general proposition in so many words, to make out the case set forth by the pleading, is not one that the court is bound to take into consideration and rule upon as an offer of proof; it is no more than the pleading has already proffered in better form." [9 Ency. Ev., p. 166.] In the case of Aull Savings Bank v. Aull, 80 Mo. l. c. 202, this court said: "It is claimed that error was committed by the trial court in refusing to permit a witness to testify as to what a deceased witness had testified to, on a former occasion, before the probate court. What the nature of that testimony was, whether material or immaterial, we are not informed. It is the duty of a party alleging error to establish it, at least prima facie. We shall not assume that the trial court erred unless it is made to appear." See also State v. Martin, 124 Mo. 514; Morton v. Heidorn, 135 Mo. 608; Seibert v. Tiffany, 8 Mo. App. l. c. 36.

2. The offer was made in rebuttal, and the ordinance not having been offered in evidence by the defendant, there was at the time nothing before the court to rebut. Bouvier defines rebutting evidence as "that evidence which is given by a party in the cause to explain, repel, counteract or disprove facts given in evidence on the other side. The term rebutting evidence is more particularly applied to that evidence given by the plaintiff to explain or repel the evidence given by

the defendant.'' In Glenn v. Stewart, 167 Mo. l. c. 593, it is said: ''Testimony in rebuttal should be carefully and strictly limited to disproof of the testimony adduced by the defendant. And when this is done, the matter is ended, and the case should be closed, for there is then an affirmance of a fact by the defendant, and the denial of that fact by the plaintiff.'' In Lux v. Haggin, 69 Cal. 255, the Supreme Court of that State says: ''Rebutting testimony is addressed to evidence produced by the opposite party, and not to his pleading, and when the answer avers the new matter which it is for the defendant to prove, evidence on the part of the plaintiff to meet the evidence given by the defendant in support of his affirmative plea is not given in rebuttal.''

3. It was within the sound discretion of the court to exclude the offered evidence for the reason that it was cumulative, and not strictly in rebuttal. In their reply only plaintiffs question the validity of the ordinance for reasons not appearing on its face; that is, on the ground that the ordinance had not the consent of a majority of the property-owners along the line. In their case in chief they attempted to prove that allegation by the evidence of Mockler, as well as that of another witness, whose testimony proved valueless. They chose to attack the ordinance in advance of any evidence offered in relation thereto by the defendant, and they were permitted to do this by the court. ''A plaintiff is not entitled on the stage of rebuttal, as of right, to put in evidence merely cumulative or confirmatory'' of that already put in by him in his original case. [10 Ency. Ev., p. 647; Young v. Edwards, 72 Pa. St. 257; Acklin v. Oil Co., 201 Pa. St. 257.] ''It is always within the sound judicial discretion of the trial court to reopen a case, or to allow testimony in chief to be introduced at a later stage of the trial, giving the opposite side an opportunity to meet and contradict it, of course, but if such discretion is not wisely exer-

cised, this court will correct it." [Beyer v. Hermann, 173 Mo. 1. c. 306, and cases cited.] The court did not err in excluding the proffered evidence.

Plaintiffs, in their brief, say that the court excluded said offered evidence on the ground "that plaintiffs' reply to defendant's answer, and the facts alleged in said reply, were a departure in pleading from plaintiffs' original pleading, the petition and cause of action therein stated, and that therefore plaintiffs could not introduce evidence under their pleadings attacking the validity of the city ordinance under which defendant claims the right to build the proposed railroad." We do not find that the court so ruled at the time; but in passing upon the motion for a new trial, the court, according to the record, did say: "I still think that the court committed no error in refusing plaintiffs the right to call in question for the first time under their reply the validity of the ordinance for reasons not appearing upon its face. . . . I will go further, and say that I do not think that they have the right to 'jockey for position' in this suit, as they undertook to do. Nor did they have the right to deliberately undertake to try one branch of their case upon the bill and another upon the reply, where it was possible to raise both issues by the bill in the first instance." The reply may not have been strictly a departure in pleading from plaintiffs' original pleading, as it in a measure explained and supported it, and was not inconsistent therewith; but we do not deem it necessary to say anything further on that score, as the evidence offered was properly excluded on the grounds previously stated.

## II.

Upon the trial, Frank J. Wiget, one of the plaintiffs, testified that certain plats shown by him had been traced off of plats in the assessor's office. These were then offered in evidence for the purpose of showing

ownership sufficient to enable plaintiffs to maintain their suit, "or a sufficient interest in owners or in parties to require their signatures to the petition before the assembly could act." It was shown that the plats represented the assessments made June 1, 1904, and that the ordinance was not introduced or passed until the spring of 1905. It was objected that the said copies of plats were insufficient to show ownership, and the objection was sustained.

Section 9164, Revised Statutes 1899, makes it the duty of the president of the Board of Assessors of the city of St. Louis to cause to be prepared plats covering all tracts and lots of land in the city, showing, upon the respective pieces of property as marked down on the said plats, the names of the persons "to whom each tract or lot was *assessed* each year." By section 9165, Revised Statutes 1899, it is made clear that the object of such plats to be kept is to enable the officials "to ascertain *what lands are taxable.*" It can hardly be maintained that such plats were sufficient to show ownership of property in plaintiffs, or in other parties whose property fronted on the line of said railway, more particularly as such plats were made as of June 1, 1904, while the ordinance or bill was not introduced until the following spring. Many changes of ownership might occur in the meantime. In Comm. v. Heffron, 102 Mass. 148, it is said in an opinion by GRAY, J., "The domicile of persons, the situation and value of property, and other facts, are required by the tax acts to be ascertained and recorded by the assessors, according to their best information and opinion, *for the sole purpose* of the assessment and collection of the tax; and there would be great danger of injustice if their estimates of any of these details or incidents were held to be competent evidence against third persons of any fact of which better evidence is obtainable." To the same effect is 10 Ency. Ev., p. 728, where it is said: "Such records are not competent in

actions between third persons as evidence of the value, title or location of the property or the domicile of the person assessed, *but only of facts relating to the assessment and collection of the tax.*" We find no case in this State wherein assessors' books or plats have been held to constitute evidence of title or ownership. The usual ground on which assessors' books have been admitted in evidence is that they constitute record admissions made by the opposite party in listing his lands for taxation. See Banking House v. Darr, 139 Mo. 660; Railroad v. Fowler, 142 Mo. 670; Steam Co. v. Scott, 157 Mo. 520.

We find in the record six of said plats, the same having been introduced in evidence in connection with the cross-examination of defendant's only witness, Edward Flad. The record does not disclose how many plats witness Wiget identified, nor how many were offered in evidence. If there were any other plats besides the six in the record, it has not been made to appear by plaintiffs; and we are unable to determine the materiality of any excluded plats, such not having been preserved in the bill of exceptions. Indeed, such plats could be of little use in evidence, except in conjunction with other evidence showing that a majority of the property-owners represented therein had not consented to the passage of the ordinance, and there was no positive evidence of such fact. Again, the fact of ownership, while an issue under the pleadings, was not disputed upon the hearing, and if any plats were excluded plaintiffs' case was in no way affected thereby. The point is decided against plaintiffs.

### III.

Plaintiffs contend that the ordinance in question is void "because section 3 thereof contains a delegation of authority by the Municipal Assembly to the Board of Public Improvements," and further, that

the other provisions of the ordinance are so dependent, on, and interwoven with, said section 3, that if the latter be void, the whole is thereby invalidated.

Section 3 of the ordinance reads: "The said Manufacturers' Railway Company is hereby authorized to construct, maintain and operate switch tracks on and across said streets at such places as it may deem necessary in the operation of the tracks hereby authorized to be constructed, and in the conduct of its business, provided that in the opinion of the Board of Public Improvements the construction of such switch tracks is practicable."

This, certainly, is not a delegation of legislative power or authority by the Municipal Assembly to the Board of Public Improvements. Said board, as a ministerial or administrative body, is simply empowered to pass upon certain facts; that is to determine whether the construction of any particular switch track is practicable. The section grants power to the defendant to construct switch tracks on and across certain streets, but the proviso imposes as a condition upon the exercise of that power the ascertainment of certain facts by the board. The question to be determined by the board is an engineering question—the practicability of the construction of the switch tracks.

In State v. Thompson, 160 Mo. 333, it is held that "the Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." [St. Louis v. Lamp Co., 139 Mo. 560; St. Louis v. Weitzel, 130 Mo. l. c. 620; Centralia v. Smith, 103 Mo. App. 439.] To the same effect is 6 Am. and Eng. Ency. Law, p. 1029, where it is said: "There is no constitutional reason why legislative functions which are merely administrative or executive in their character should not be delegated by that branch of the government to other departments, or to bodies created by it for that pur-

pose. A distinction is drawn between a delegation of power to make the law, involving necessarily a discretion as to what it shall be, and a grant of authority relative to its execution, though the latter involves the exercise of discretion under and in pursuance of the law." On page 1031 of the same volume is the following: "Where an act is clothed with all the forms of law, and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only upon the happening of some specified contingency. Thus a municipal corporation may pass an ordinance within the limits of its delegated powers, contingent as to its operation and effect on the existence or occurrence of facts germane to its subject-matter."

## IV.

The vital question in this case is whether the construction and operation of a steam railroad such as is authorized by the ordinance in question would amount to a monopoly by said railroad of Second street, or would unreasonably interfere with or impair the rights of the abutting property-owners to access to and egress from their property.

In a long line of decisions, beginning with Lackland v. Railroad, 31 Mo. 180, and extending through the reports down to DeGeofroy v. Merchants Bridge Ter. Ry. Co., 179 Mo. 698, it has been ruled by this court that it is lawful for a city to authorize the construction and operation of a railroad in a street, and that such use of the street is not a new servitude. On this proposition, whatever views may be entertained elsewhere, there is no further room for argument in this State. Thus, in Gaus & Sons Mfg. Co. v. St. Louis, K. & N. Ry. Co., 113 Mo. 308, it is said: "There has been great diversity of opinion among the courts of this country as to whether, though under proper legislative authority, laying a track on the established grade

and operating a steam railroad thereon in the transaction of commercial business along a street, is subjecting the street to a public use not contemplated in a general grant or dedication. Whatever the rule may be elsewhere, this court has been uniform in holding that such use is not a perversion of the highway from its original purposes.''

So, also, in DeGeofroy v. Merchants Bridge Ter. Ry. Co., supra, this court, while holding that the erection of an elevated railroad structure in the street is the imposition of a new servitude on the use thereof, decided that ''the construction and maintenance of a steam or street railroad on the grade of such street, in pursuance of municipal authority, the municipal corporation having power to grant it, is not a new or additional servitude on the land upon which the street is constructed, but falls within the use contemplated when the street was laid out or acquired by the public.''

This preliminary question being settled, we will now proceed to the consideration of the question whether the ordinance, in effect, gives the defendant the right to the exclusive use of the public street, or unreasonably interferes with the rights of abutting property-owners. For light we shall turn to some analogous cases.

The case of Gaus & Sons v. Railroad, supra, was a proceeding to enjoin the operation of a railroad. In that case the plaintiffs owned an entire city block, fronting on Main street, between Clinton and Madison streets, in the city of St. Louis, on which they had erected a factory, having a front of 240 feet and a depth eastwardly from Main street of 130 feet, which factory had been erected for the special purpose of, and was adapted by its construction to use as, a planing mill, sash, door, blind and box factory, and was then used as such. It appeared that the Main street front was so constructed as to be the only front adapted for receiving and shipping lumber from the

street, and that all doors and driveways opened on that street. The defendant in that case already had on Main street a double-track railway, the easternmost rail of which was within 15½ feet of the curb in front of plaintiffs' factory. It further appeared that plaintiffs and their customers had always had, prior to the institution of the suit, free access to the factory by driving wagons and other vehicles over Main street to its front, and had always been able to drive in or out of said premises, and were able to have wagons and vehicles stand on the street, in front of the factory, for the purpose of receiving and discharging lumber and mill work. The petition in said case charged that the defendant railway company threatened, and was about to occupy and obstruct said street by laying tracks thereon, in front of the factory, and by operating steam locomotives thereon, thereby permanently obstructing the street, and not leaving space between the track and the building sufficient to permit of standing wagons and other vehicles, without constant danger of collision with engines and cars passing to and fro over said tracks, "all of which would wholly destroy the use of the street as a thoroughfare, and tend to manifest wrong and injury to plaintiffs and damage of the said property." The prayer was for an injunction. As is stated by the court in the opinion, the alleged damage "consisted in the prevention of free ingress and egress to and from the streets, noise and smoke, damage from fires, shaking and vibration of building, all caused by the passage of engines and cars over the street in such proximity to the premises." The court further said: "It appears from the evidence that the only substantial damage which was special to the plaintiffs and not common to the public, shown by them, consisted in the interference with their free access from the street to their factory; the obstruction of the light and air across the open street; smoke, cinders and dust from engine and cars;

noise and jarring of the ground, all caused by the movement of trains. These may cause damage to, and depreciation of, the property, but the damage results from a legitimate use of the street, and which might have been anticipated by plaintiffs as a probable use when they bought their property and erected their improvements. [Cross v. Railroad, 77 Mo. 321; Railroad v. Railroad, 97 Mo. 469.] The public use was fixed when the street was granted or dedicated. The license granted by the city to the defendant to lay its tracks upon the streets and run engines and cars thereon, in the transportation of passengers and property, was not a rededication to a new and distinct public use, but was a mere license to use it in a way contemplated by the owner of the land when he subjected it to such uses. The lots were purchased, held, and improved, not only in view of the advantages of the street, but also subject to the burdens of all consistent public uses which the increasing wants of the public might thereafter demand. For any damages that may be caused by unlawful or negligent maintenance of the track in the street, or by negligent use of engines or movement of trains, defendant will be liable in an action for damages. Plaintiffs have shown no ground for injunction." It will be noticed that in that case there was already a double-track railway on the street, the easternmost rail being within 15½ feet of the curb in front of the factory, and that it was threatened to lay down two additional tracks in front of the factory. The grounds of complaint were practically the same as in this case.

In Lockwood v. Wabash Ry. Co., 122 Mo. 86, the street there involved was Collins street, between Franklin avenue and Carr street. The width of the street between curbs was only twenty-four feet. It appeared that one track was already laid down in the west half of Collins street, and the suit was to enjoin the laying of a second track in the east half thereof.

The injunction was granted. It was found by the court that the distance between the east rail and the curbstone was only three feet and six inches, as to one lot of the plaintiffs, and three feet and eight inches, as to the other lot, and that on the west side of the street the distance between the west rail and the curb line was three feet and four inches. The court said: "The testimony is uncontradicted and convincing to the effect that traffic is excluded from the street during the occupation of the same by the cars, and that the business of the railroad company and of the public cannot be carried on there at the same time. When the railroad company makes use of the street, the public traffic by all others is excluded, and this covers a period of three and one-half hours every day between 7. a. m. and 6 p. m. The two cannot exist and be carried on at the same time. Where the single track exists, the space between it and the sidewalk is nine feet and a fraction, and freight wagons cannot pass a train on this single track, with safety. It also appears that respondents' property is damaged in its rental and salable value by the presence of the cars on the street."

In the case at bar there is but a single track to be laid in the center of the street, and the distance from either rail to the curb line at the narrowest point in the street will be about ten feet and six inches. There is no evidence whatever in this case that the value of the property of any plaintiff will be depreciated by reason of the laying of said track and the operation of trains thereon.

In Dubach v. H. & St. Joe R. R. Co., 89 Mo. 483, the defendant railway company maintained and operated its main track along Collier street in the city of Hannibal. The track was south of the center of the street, the greater part of the street being north of the north rail of the track. About the year 1866 the company laid down a side track on the north side of the street. In 1882 it moved the side track about four feet

to the north, and such removal of the side track "virtually destroyed for other public uses that portion of the street north of said main track." It was in evidence that by moving the side track to the south instead of to the north of the main track, cars with cribs of lumber upon them could have passed, and the north side of the street would have been left open for other vehicles and general travel. The company, at the instance of plaintiff, a lumber dealer, was enjoined from moving its side track northwardly.

In Knapp, Stout & Co. v. St. Louis Trans. Ry. Co., 126 Mo. 26, the defendant laid a switch track "right up to the line of plaintiff's property." The court said: "We have reached, and before expressed, the conclusion that this track, placed on what is properly the sidewalk, close up to the plaintiff's lot, is an unlawful structure—one which the city did not and could not legalize as against the rights of plaintiff." Injunctive relief was granted.

In Schulenberg & Boeckeler Lumber Co. v. St. Louis, K. & N. Ry. Co., 129 Mo. 455, the evidence was that Hall street, in the city of St. Louis, was one hundred feet wide, with sidewalks twenty feet wide, leaving a space of sixty feet between the curbs. It appeared that there were four tracks of two different steam railway companies already in the street when defendant threatened to lay down and operate an additional double track. Plaintiff's property abutted on Hall street, and it was proposed to lay the tracks upon the sidewalks, "by which," as the court said, "the street is rendered utterly useless as a public thoroughfare for ordinary travel, and plaintiff is permanently hindered in the use of the sidewalk and street, as well as ingress to and egress from his property." Upon these facts the defendant company was enjoined from building said tracks.

In Sherlock v. K. C. Belt Ry. Co., 142 Mo. 172, the defendant company was enjoined from laying a

track and operating a railroad in an alley, sixteen and one-half feet wide, in Kansas City. The court held that "the ordinance permitting the laying of this track, with the unlimited right to run steam engines and cars thereon at all times of day or night, practically gives defendant the monopoly of that alley, the very nature of its use by the defendant each time totally obstructing it and excluding all others therefrom."

In Corby v. C., R. I. & P. Ry. Co., 150 Mo. 457, an injunction was granted against the right to operate a railroad in an alley twenty feet wide. The court said: "In the case at bar it is plain that while a train of cars was moving along or standing upon this twenty-foot alley, no vehicle could use it, and the ordinance puts no limitation upon the continual and continuous use of the alley, by day and night, by the railroad company. . . . This ordinance is worse than any that has ever before been construed by this court; for it authorizes the cars to stand on the switch track in this alley for twelve hours."

These are about all the Missouri cases cited by the plaintiffs, which tend to throw light on the questions under discussion. The evidence in the case at bar makes it quite clear that there is less ground for injunctive relief in this case than in any of the cases cited.

According to the testimony of Edward Flad, which was not controverted, there will be more space between rails and curbs on Second street than between rails and curbs on Olive street, which latter is one of the principal thoroughfares of the city of St. Louis. He further stated that there would be as much space between steam railroad cars and the curbs on Second street as between street cars and curbs on Olive street, allowing a width of nine feet to street cars and ten feet to railroad cars. The evidence with reference to that part of Second street lying between Poplar and Convent streets, which is the narrower portion of

Second street, is rather meager. It would appear that while the street is not wide, that part of the street does not lie in a busy business center, and that there are but few large business or manfacturing establishments thereon, and the few referred to in the evidence have the facility of either alleys or side streets for the receipt and shipment of goods.

There are only three plaintiffs whose property abuts the narrower portion of Second street. Two of these have access other than from Second street. The Seibel-Suessdorf Company has a double front, one on Second street, and one on Lombard street. Mrs. Riechmann's property extends from Second street to Risley street, so that she also has two fronts. As to Frederick Suessdorf's property, the back part thereof is used in connection with the Seibel-Suessdorf Company's building, which is reached from both Second and Lombard streets. The front part is used for and occupied by a saloon and boarding house. Indeed the evidence does not show that access from Second street will be destroyed or unreasonably interfered with. Frederick Suessdorf's conclusive statement, while testifying as a witness, "I cannot get in there, and it would knock me out entirely," hardly consists with the facts and conditions as disclosed by the evidence.

As said in the case of Morris & Essex Rd. v. Prudden, 20 N. J. Eq. 530, "there must not only be a violation of plaintiff's rights, but such a violation as will be attended with substantial and serious damage. . . . Mere diminution of the value of the property of the party complaining, by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief. . . . The retention of the injunction will be of little benefit to the complainant, while it will work serious annoyance to the dedefendant. An injunction ought not to be granted where the benefit secured by it to one party is but of little importance while it will operate oppressively and

to the great annoyance and injury of the other party. . . . The injunction by which the progress of the work is arrested must not only cause great injury to the defendant, but also. is the occasion of great inconvenience to the public.''

We have carefully considered the evidence, and are of opinion that the building and operation of this railroad on Second street will not constitute a monopoly of the street, or unreasonably impair the rights of the plaintiffs to access to and egress from their property, or result in irreparable injury to their property.

The judgment is affirmed. All concur.