Arthur F. KINZEL, Plaintiff-Appellant,

v.

WEST PARK INVESTMENT CORPORATION, a Corp., Defendant-Respondent.

No. 46927.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Motion for Rehearing or to Transfer to Court en banc Denied and Opinion Modified on Courts Own Motion Jan. 11, 1960.

Frank Mashak, St. Louis, for appellant.

Charles F. Hamilton, F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeck-el & Hamilton, St. Louis, for respondent.

HOUSER, Commissioner.

This is a suit by a tenant, Arthur F. Kinzel, against his landlord, West Park Investment Corporation, for personal injuries sustained in a fire which originated in the rented premises. Plaintiff prayed for $75,000 damages. From a judgment for the defendant, following a jury trial, plaintiff has appealed.

Plaintiff and his wife rented Apartment No. 10, one of twelve apartments in defendant's building. Apartment 10 was on the third floor front, west side. The monthly rental included the item of electricity used by plaintiff.

Plaintiff's theory is that defendant, having contracted to supply electricity to him as a part of the rental agreement, reserved control over the electrical wiring system in plaintiff's apartment; that defendant owed plaintiff a duty to maintain the wiring system in a reasonably safe condition; that the electrical wiring "in said apartment house, and more particularly in the apartment occupied by plaintiff," was in a defective and dangerous condition; that defendant was notified of the defective condition in ample time to correct and remedy it, but that defendant failed to correct the defective condition; that a fire was caused by the defective wiring, and as a result plaintiff sustained severe burns.

Plaintiff and his wife testified that they "always" had trouble with the lights in their apartment. They would go off two or three times a month, sometimes every week. They would stay off as long as an hour, or until the janitor could be notified and replace the fuses. Sometimes they would go off in the entire apartment; sometimes in the living room, and then in the kitchen. Sometimes the lights in the apartment next door would go out. Often the lights would go out in half the building. Sometimes all of the building would be out of lights. The receptacles in the walls all sparked. You could see a spark when you made the connection with a plug, and it would spark again when you made the disconnection. Sparks about an inch long would "fly out of there." The sockets were loose. There was a light socket in the west wall of the living room above the baseboard. Sparks would fly out of that socket. They always had trouble with that socket. It was out of order. It did not work. It "was getting worse all the time." A floor lamp was connected to that socket. An overstuffed chair was located a matter of inches from it. The screws came loose in the receptacle that held the switch for the ceiling light in the living room. The switch was not tight. They never used the socket in the bedroom. It was not working * * * was always out of order. The light would flicker, and it would spark. The receptacle in the sunroom began sparking after they moved in.

When you would try to plug it in sparks would fly from it. Plaintiff's wife got a shock from the receptacle in the sunroom. She was shocked several times while connecting an electric fan, and while ironing. When she plugged into the receptacle "sparks would fly out of there" and she would get a shock. Once when connecting the washer to the socket in the basement she received a shock in her right arm which completely paralyzed it for two or three days. A friend of plaintiff's wife plugged in her electric iron to press a dress. The sparks flew out of the socket and she received a "terrific" shock. "A lot of fuses" would blow out and the lights go off. When you plugged something in, the fuses would blow. Sometimes they would blow without plugging in. Fuses would blow two or three times a month. In addition to the frequent notice given the janitor about these conditions plaintiff and his wife testified that they sent a letter to defendant in the latter part of July, 1955 complaining that the wiring was bad, telling about the sparks and switches, and the blowing of fuses; that they received an answer from defendant promising to fix the wiring, but that no repairs were made. On the evening of September 17, 1955 plaintiff and his wife went to a social meeting, returning to their apartment shortly after midnight. They turned the lights on when they entered the apartment, and turned them off when they went to bed. Mrs. Kinzel had an electric fan connected for a while, but it was disconnected before she went to sleep. The floor lamp was disconnected. At the time they retired nothing was plugged into the socket or receptacle on the west wall of the living room or into the socket on the opposite side of the partition in the bedroom. On the previous day sparks had come out of the receptacle in the west wall of the living room. About 5:30 a. m. September 18, 1955 plaintiff's wife was awakened by heat from a fire which was in progress in the living room. She awakened her husband. The west wall, the ceiling, and part of the north wall of the living room were in flames. Flames were "shooting * * * coming * * * out of the west wall and part of the ceiling" of the living room; "shooting up the west wall," the flames were "shooting right out of the wall," "leaping up the wall to the ceiling" on the opposite side of the armchair. It was necessary for plaintiff to go through the flames to reach an exit. In so doing he was badly burned.

Defendant's evidence indicated that defendant had received no notice from plaintiff of such difficulties with the lights; that the trouble in the building had been corrected months before the fire by the installation of a new switch box, after which no complaints were made by any of the tenants; and that the fire did not originate in the living room wall, and that immediately after the fire the fuses were intact and had not blown.

The sole point on plaintiff's appeal is that the court unduly restricted and limited plaintiff in the presentation of his case by excluding the testimony of plaintiff's witness Gladys Stinson. This lady had lived in the building for 14 or 15 years. At the time in question she occupied Apartment No. 7, a back apartment on the second floor, west side. She testified that she had difficulty with the lights in her apartment many times after defendant assumed the management and control of the building. Defendant's counsel objected "to any difficulty she may have had in her apartment." The court sustained the objection, commenting that "We are only concerned with this one apartment." Counsel for plaintiff then stated "Your honor, I want to show that the wiring in this house was bad, and of course, she has knowledge of it, and she can testify what the general condition was, and of what notice the landlord had about the defective wiring." The court ruled that plaintiff would be held "to this one apartment * * * unless you can bring in expert testimony to show the wiring was bad; she is no expert." In the colloquy which followed defendant's counsel indicat-

·ed that his objection was that trouble in Stinson's apartment was immaterial to any ·difficulty in Kinzel's apartment, and the ·court again sustained the objection. At the ·conclusion of the testimony given by the second succeeding witness the following statement was made by plaintiff's counsel, in chambers:

· "I take exception to the Court's ruling on the attempted testimony by ·Gladys Stinson, by asking her what was the condition of the lights in her ·apartment, and if she had any complaints, and the Court ruled that I was not entitled to deduce that testimony. My offer of proof would be that her testimony would show that that is a recurring thing, this bad lighting, that the lights would flicker and go on and off through each apartment and more particularly her own apartment; she knows of her own knowledge that the ·defendant had notice at various times but they did not heed the notice, and they did nothing, and that they were totally indifferent to the reports of these lights being out and being in total ·darkness for one hour or two hours at a time, and that she would agree that her refrigerator would go off and sometimes her lights, and that it would be reported to the janitor, and that when her lights would go on that the lights would go off in the Kinzel apartment, and I think that is very material here, and I think that the offer of proof should have been admitted."

The court again sustained the defendant's objection on the ground that what occurred in Stinson's apartment was "immaterial."

An offer of proof must show all of the facts necessary to establish the admissibility of the testimony sought to be introduced, Byam v. Kansas City Public Service Co., 328 Mo. 813, 41 S.W.2d 945, loc. cit. 952, in sufficient detail to demonstrate its relevancy and materiality. Stipp v. Tsutomi Karasawa, Mo.Sup., 318 S.W.2d 172. For example, in Pedroli v. Russell,

1958, 157 Cal.App.2d 281, 320 P.2d 873, an action for damages to property caused by fire which started in a wooden floor immediately beneath a steam boiler manufactured by defendant, it was held not error to sustain an objection to an offer of proof by plaintiff that defendant manufactured another boiler of larger capacity with a radiation sheet three or four inches above the floor. There was no offer to show that such sheet was fire resistant, or that the burners in the boiler so equipped were similar in type and location. It was held that the offer failed to show the *relevance* of the evidence offered. In the instant case the issue before the court was the condition of the wiring and the cause of the fire in Apartment 10. From the fact that there were numerous outages, blown fuses, defective sockets, etc., in Apartment 10 plaintiff wanted the jury to draw the inference that the wiring in Apartment 10 was defective and dangerous, and that the fire originating in Apartment 10 resulted from that defective wiring. There was no contention that defective wiring in Apartment 7 caused the fire in Apartment 10. By the witness Stinson plaintiff sought to prove that there were outages and difficulties with the lights in Apartment 7, that the apartment house in general had "bad wiring," and that complaints were made by other tenants with respect to lighting difficulties they had experienced in other apartments. In Dixon v. Montgomery Ward & Co., Inc., 351 Ill.App. 75, 114 N.E.2d 44, plaintiffs sued for the destruction of a home due to the alleged overheating of a furnace purchased from defendant. It was reversible error to admit testimony that another similar furnace sold by defendant to a neighbor of plaintiff at about the same time was improperly wired; proof of that fact would not tend to prove that plaintiff's furnace was improperly wired. While the facts in the two cases differ the principle is the same. The fact alone that the wiring in the other apartments was defective would not tend to prove that the wiring in plaintiff's apartment was defective. The wiring conditions in Apartment 7 were not

in issue, nor were the wiring conditions generally in the other portions of the apartment building. The issue was the condition of the wiring in Apartment 10. The conditions in other apartments, or generally throughout the building, would not be relevant and evidence thereof would not be admissible on the issue before the court. "Generally, it may be said that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous, to show conditions at places other than the one in question, particularly places which are remote from the place in question, unless a proper basis has been laid for the admission of such proof." 20 Am.Jur., Evidence, § 307. In Fitzgerald v. Clark, 17 Mont. 100, 42 P. 273, 30 L.R.A. 803, affirmed 171 U.S. 92, 18 S.Ct. 941, 43 L.Ed. 87, it was held that the existence of a fault in one mineral vein cannot be proved by showing a fault in another vein which is claimed to be a continuation of the vein in question, in the absence of a showing of a continuity in the latter fault. Likewise, in order for testimony about defective wiring or current failures in Apartment 7 or in other parts of the building to be relevant evidence, admissible on the issue of the existence of defective wiring in Apartment 10 or on the question of the cause of a fire in Apartment 10, a proper basis would have to be laid for its admission. The offer of proof would have to include a showing that there was some connection between the two; that the two apartments were on the same wiring circuit and that defects in Apartment 7 or in the other parts of the building would affect the circuit in Apartment 10, or could result in a fire in Apartment 10. The only hint at a connection between the two was that part of the offer of proof that "when her lights would go on * * * the lights would go off in the Kinzel apartment," but this was wholly insufficient for the purpose in question.

■ Furthermore, an offer of proof should be "specific and definite," City of Kirkwood v. Cronin, 259 Mo. 207, 168 S.W. 674; Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' R. Co., 230 Mo. 59, 130 S.W. 288, and not a mere statement of the conclusions of counsel. Howard v. Coshow, 33 Mo. 118. This offer of proof was general, vague and indefinite. An offer to show that there was "bad wiring" was an offer to prove a conclusion. An offer to show that "bad lighting is a recurrent thing" was without meaning. An offer to show "what the general condition was" was insufficient without stating how and in what manner the general condition would bear upon the particular. An offer to show "the condition of the lights in her apartment," without stating what the condition was, or how or in what manner the condition of her lights would affect the condition of the lights in Apartment 10, or that the fire in Apartment 10 could have been caused by the condition of the lights in her apartment, was insufficient. An offer to prove that the lights would flicker and the current would go on and off, without any statement in the offer as to the cause of the flickering and interruptions, was insufficient.

Some incompetent matters having been included in the offer the trial court was not obliged to sort out or separate the competent from the incompetent, but was justified in rejecting the whole offer. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310.

We have examined the authorities submitted by plaintiff but they do not militate against our conclusions.

In the body of his brief on appeal plaintiff complains of the exclusion of the testimony of Gladys Stinson that on August 25, 1955 a step in the fire escape broke when used by her brother. Plaintiff claims that this testimony was admissible because it contradicted the janitor, who testified for defendant, and would have affected the credibility of his testimony that the step was broken out about a week before the fire, which would have been about September 11, 1955. No such point appears in plaintiff's brief under the heading "Points Relied On." The point has not been prop-

erly presented, and his argument contains no citations of authority on the point.

No error appearing in the single point properly presented for review, the judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.