THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*, v. PORTER.

Division Two, November 29, 1892.

1. **Railroad:** CONDEMNATION OF LAND: MEASURE OF DAMAGES. The measure of damages for taking land in a railroad condemnation proceeding is the value of the land, estimated with reference to the uses to which it may be put, and, when less than the whole estate is taken, then the increase or diminution in value of the part not taken in consequence of the appropriation of the other part is to be considered.

2. ———: ———: ———: FERRY. Where the part not taken is used by the owner as a ferry landing the measure of damages to such part is the difference in the market value for all uses to which it had been applied or for which it was suitable before and after such taking, and it is improper to permit witnesses to state the difference in "value of the ferry" with or without such railroad.

3. ———: ———: MARKET VALUE: FERRY. Market value is such price as can be obtained on the usual and ordinary terms of a private sale.

4. ———: ———: ———: ———. The increased inconvenience and danger to the public in reaching the ferry cannot be considered in estimating damages done to such land by reason of the proximity of the railroad tracks, unless it appears that the public are for this reason largely deterred from using the ferry.

5. ———: ———: ———: ———. Nor is it an element of damages in such case that custom is diverted from the ferry by reason of the business done by the railroad as common carrier or from a change of the routes of public travel caused by the location and operation of the railroad.

6. ———: ———: ———: BUILDING. It is improper in estimating damages to a building, where part of it only is on the right of way sought to be condemned, to make allowance for another part previously condemned by another company or for damages done the remainder of the building by the first taking.

7. ———: ———: ———: EVIDENCE. Evidence that there were several hundred tons of ice in the building worth $2 a ton when the land was condemned is improper, it being personal property, and it appearing that it was not condemned with the land and could have been removed.

*Appeal from Moniteau Circuit Court.* — HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *Wm. S. Shirk* for appellant.

(1)  The petition does not seek to condemn the right to take or interfere with a ferry franchise of the defendant.   It only seeks to condemn the right to build its railroad over certain lots, in the city of Boonville, fronting on the Missouri river, which the defendant below claimed were used by him as a ferry landing. The ownership of the lots and of the ferry franchise is entirely separate and distinct.   The ownership of the banks of a river does not create in such owner a ferry franchise.   Nor is it necessary that the owner of a ferry franchise should own a single foot of soil on either side of the stream.   *Stark v. Miller*, 3 Mo. 470; *Ragan v. McCoy*, 29 Mo. 368; Lewis on Eminent Domain, sec. 484; *Prosser v. Wapello*, 18 Iowa, 327; *Moses v. Stanford*, 11 Lea (Tenn.) 731; *Railroad v. Rodgers*, 1 Duval (Ky.) 135; *Railroad v. Jones*, 56 Am. Rep. 260; 7 American & English Encyclopedia of Law, p. 942, note 3; 8 American & English Encyclopedia of Law, p. 585; *Bell v. Clegg*, 25 Ark. 26.   From these authorities it will be seen, that, if the ferry franchise is damaged, the recovery must be  had in another action. (2)   Nor is the ferry franchise an appurtenance to the lots.   Lewis on Eminent Domain, sec. 135; Rapalje & Lawrence's Law  Dictionary,  title  "Appurtenance;" *Prosser v. Wapello*, 18 Iowa, 327, 335, and other authorities cited to point 1.   (3)   The court below erred in admitting evidence, all through the trial of the case, as to the damage  done  to defendant's ferry franchise by the building of plaintiff's railroad, and in refusing to strike

out such evidence on plaintiff's motion. See authorities to points 1 and 2. Such evidence is admitted to have been improper and incompetent by the defendant's fourth instruction. (4) The court below also erred in permitting all of the defendant's witnesses to testify as to the value of the lots as a landing or landings for defendant's ferry, and the damages done to them as such, for two reasons. *Mills v. Lonergan*, 91 Ill. 513; *Mills v. St. Clair, etc.*, 8 How. (U. S.) 569; Lewis on Eminent Domain, sec. 480; *Sedalia, etc., v. Abell*, 17 Mo. App. 632; *Railroad v. Suydam*, 17 N. J. L. 25. (5) It was error for the court persistently to admit the evidence referred to in points 3 and 4 during the whole trial and to refuse repeatedly to strike it out. *Cobb v. Grffith*, 12 Mo. App. 130. In state cases it has long been settled in this state that error in admitting improper evidence is not cured by instructing the jury to disregard it. *State v. Mix*, 15 Mo. 153; *State v. Rothschild*, 68 Mo. 52. (6) Defendant's third and fourth instructions were also erroneous. (7) So was the instruction on the icehouse as an element of damages. *Forney v. Railroad*, 33 Am. & Eng. R. R. Cases, 162. (8) And it was also error to permit defendant to testify as to amount and value of the ice in the icehouse. *Railroad v. Pearson*, 35 Cal. 247; *In re Railroad*, 35 Hun, 306; s. o., p. 633.

*John Cosgrove, J. H. Johnston* and *Draffen & Williams* for respondent.

(1) The constitutional guaranty of "just compensation" for property taken or damaged for public use means that the owner shall receive a full equivalent for the entire loss sustained by the appropriation of his property. The intention is that the compensation paid shall equal the damages inflicted, that the owner "shall

be made whole." There is no artificial rule upon this subject. The inquiry in this class of cases is as to the extent of the owner's loss, the situation of the property, the manner in which it is or may be used, its adaptability to any particular use, and how its value for such purpose will be affected by reason of the location of the railroad over the same, are proper matters for consideration in estimating the damages. 3 Sutherland on Damages, p. 433; Lewis on Eminent Domain, secs. 462, 480; *Railroad v. McGrew*, 104 Mo. 282; *Bridge Co. v. Ring*, 58 Mo. 491; *Boom Co. v. Patterson*, 98 U. S. 403; *King v. Railroad*, 32 Minn. 224. (2) It was competent for defendant to show that the location of the lots in question made them specifically valuable as a ferry landing, and that there was, at the time of and for forty years prior to the institution of these proceedings had been, an established ferry across the Missouri river at said point. It was proper to take into consideration any and every injurious effect that the location of the railroad would have upon the utility of said lots as a ferry landing, everything that would render them less desirable for that purpose and which would, therefore, depreciate their value. *Railroad v. McGehee*, 41 Ark. 202; *Boom Co. v. Patterson*, 98 U. S. 403; *Railroad v. Railroad*, 56 Am. Rep. 173; *Autenrieth v. Railroad*, 36 Mo. App. 254; *Railroad v. Waldron*, 88 Am. Dec. note, p. 113, *et seq.* (3) The defendant did not introduce any evidence as to damages to a ferry franchise, and the court did not rule that any such evidence might go to the jury. (4) The witnesses in making up their estimate of damages rightly took into consideration the fact that the location of the railroad over the lots would render the ferry less accessible therefrom and would deter persons from crossing and thereby diminish the profits. 3 Sutherland on Damages, p. 433; *Driver v. Railroad*, 32 Wis. 569; *Snyder*

*v. Railroad*, 25 Wis. 60; *Railroad v. Waldron*, 88 Am.
Dec. 100, and note; *Railroad v. Hill*, 56 Pa. St. 460.
It was proper to show that these lots were the only ones
suitable for a landing.   *Trustees v. Dennett*, 5 Thomp.
& C. 217.   (5)   If part of the defendant's icehouse
was on the right of way of the Tipton branch, it must
be presumed that it was there by permission.   The
plaintiff could not condemn half of the house and not
pay for the damages done to the half not taken.   The
defendant was the owner of the house and entitled to
compensation for the damages done to it.   (6)   When
the condemnation proceedings were had it was hot
weather.   The ice in the icehouse could not be
removed, and if it had been feasible to remove it there
was no place to transfer it to.   When the icehouse was
taken the ice was virtually destroyed, and defendant
should be compensated for all loss sustained.   *Patterson
v. Boston*, 20 Pick. 159; *Bridge Co. v. Shaubacher*, 57
Mo. 582; *Price v. Railroad*, 27 Wis. 98.   (7)   This
evidence, however, could not have injured the plaintiff.
No instructions were predicated thereon, and in laying
down the rule for the assessment of damages this was
not included.   *Valle v. Picton*, 91 Mo. 207.

THOMAS, J.—This is a condemnation proceeding.
The defendant was awarded $10,500 damages to his
property and $1,725 interest thereon, making $12,225
in all, and plaintiff appeals.

The record shows that plaintiff commenced two
actions in the circuit court of Cooper county, one in
May and the other in November, 1887, to condemn a
right of way, one hundred feet wide, for its road,
through lots owned by defendant in the city of Boon-
ville.   The commissioners in the first case reported
June 11, 1887, allowing defendant $5,000 damages, and
in the second case November 26, 1887, allowing him

$700. Plaintiff deposited the sums thus allowed with the clerk of the circuit court as required by statute. Both parties excepted, in due time, to the reports, and the court set them aside.

On application of plaintiff the venue was changed to the circuit court of Moniteau county, where, by consent of parties, the two cases were consolidated and tried as one. It was also agreed that the only question that should be submitted for adjudication was the amount of damages defendant was entitled to by reason of the location, construction and operation of plaintiff's road through said lots.

The evidence contained in the bill of exceptions shows that defendant owned eleven lots in Boonville, bounded on the north by the Missouri river, and running south to Water street, which is parallel with the river; the average distance across the lots from the river to Water street is about one hundred and fifty feet, and each lot has a river frontage of ninety feet, making the river frontage of all the lots three or four hundred yards; four of the lots extend from First street on the west to Second street on the east, and seven lie east of the latter street, which runs north and south, its northern terminus being the river; ten or twelve years ago defendant conveyed to the Boonville, St. Louis & Southern Railway Company a right of way forty feet wide, next to the river, through all his lots east of Second street, for what is known as the Tipton branch road. The latter road runs north along Second street till it reaches defendant's property, where it curves and runs east along the river bank to Fifth street; the right of way condemned in this proceeding includes in it the right of way previously conveyed for the Tipton branch; plaintiff proposed to construct its main line along the river bank, extending west of Second street, and from that line to construct a switch to connect with the

Tipton branch on Second street south of Water street. Defendant had operated a ferry boat across the river at Boonville since 1852, using the lots in question for a landing. After the construction of the Tipton branch, the shore of the river east of Second street was not used, indeed could not be used for a ferry landing. Some time prior to the institution of the present proceeding, defendant, by permission of the city, improved the foot of Second street for a landing, which he used up to the time of the trial (which took place in March, 1890), and which he was then using. Of defendant's lots west of Second street, there was left outside of the right of way, ten feet on the south side and from thirty to fifty feet on the north side, according to the meanders of the river bank. The strip left between the right of way and the river can be reached by the way of First street from the west and Second street from the east, and an alley equidistant between these streets extending to Water street; east of Second street the right of way extends to the river. There was quite an elevation of the lots in their natural state from the river to Water street, and, by the construction of the roadbed, this elevation is considerably increased. The river bank west of Second street, by the action of the water, changed often, so that the point of landing of the ferry boat had to be shifted to suit the stage of the river and the grade of the bank.

The questions presented for our decision grow out of the rulings of the court on the admission and rejection of evidence, and the proper measure of damages. It appears very conclusively that the lots in question were made land chiefly, were low and subject to overflow, and were worth but little except as a ferry landing. Defendant's witnesses estimated the damages at from $10,000 to $25,000, while the evidence on the part of plaintiff tended to show that the damages were less than

$4,000. The other facts necessary to an understanding of the points decided will appear in the opinion.

I. In condemnation proceedings, in determining the damage that ought to be allowed the land-owner, "the correct rule to be applied relates to the value of the land to be appropriated, which is to be assessed with reference to what it is worth for sale, in view of the uses to which it may be put. * * * And, when less than the whole estate is taken, then there is further to be considered how much the portion not taken is increased or diminished in value in consequence of the appropriation." *Railroad v. McGrew*, 104 Mo. 282. "So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." *Boom Co. v. Patterson*, 98 U. S. 408.

All damages caused to persons in possession of the land not taken by reason of the use to which the part taken has been or is to be put, should be taken into the account. These may flow from making ingress and egress to and from the part not taken either impossible or more dangerous and inconvenient. Note to *Railroad v. Waldron*, 88 Am. Dec. 113.

The court in the case at bar as to the measure of damages substantially instructed the jury in compliance with these general rules; but we think the witnesses were permitted, in some respects at least, to base their estimate of the damages to the part of defendant's land

not taken upon erroneous principles. The difference in the market value of the property for the uses to which it is adapted, before and after the appropriation, is the true criterion of the damages sustained. In this instance, however, many of the witnesses stated the difference *in the value of the ferry*, with and without the railroad, whereas they should have been confined to *the market value of the land*, for all purposes to which it had been put, or for which it was suitable. We do not here mean by, "market value," the price the land would bring at public auction and forced sale for cash, but such price as could have been obtained for it, on the usual or ordinary terms of a private sale.

Witnesses may also give the reasons they have for saying the property has been damaged or not damaged, such as the difficulty and hazard of access, and the expense of overcoming such difficulty and hazard, if it be possible to overcome them, and also the facilities of access that remain after the appropriation; but the danger to the public of reaching the ferry landing cannot be considered by the jury, unless such danger results, in some degree, in deterring people from reaching it, and diverting them from it. This is manifestly just, for the damages recoverable in this as well as other cases must accrue to the person complaining, and not to others.

In determining whether the construction and operation of the railroad in this case will probably have the effect of diverting the public from defendant's landing, the jury should consider the accessibility by means of public streets and alleys, the increase in the grade to it, the increased difficulty and hazard of reaching it, its width and extent, and whether it is the only point at Boonville and vicinity adapted to a ferry landing, *i. e.*, whether people must use this ferry or

none at all. It is evident the right of way here does not affect *the landing* proper,—that is, the difficulty of *getting on and off the boat* is not increased,—but the increased difficulty, if any, consists in reaching the point where the boat touches the land. The right of way leaves from thirty to fifty feet of defendant's land next to the river untouched, and of course the steepness or unevenness of this strip cannot enter, and ought not to enter, into the estimate of damages, for such steepness and unevenness are natural, for which plaintiff is in no way responsible, and to which its act in no way contributes. If this strip affords the space required for a ferry landing at that point, which may be reached by the streets and alley leading to it, and persons on foot or horse and all sorts of vehicles can, by means of the strip, streets and alley, reach and leave the boat at the suitable points of landing, without any further inconvenience or danger than such as results from crossing a railroad track and passing over a grade increased in steepness, then no damage is done to the land *as a landing*, unless the construction and operation of the road probably destroys or diminishes its use as such *by the public;* nor should anything be allowed for a diversion of custom from the landing resulting either from the business done by the plaintiff in its capacity of common carrier, or from a change of the routes of public travel or the methods of commerce and trade caused by the construction and operation of the railroad.

II. The evidence shows that the defendant had erected an icehouse on one of the lots east of Second street, which was eighty-four feet long and forty feet wide, and was set back from Water street ten feet. Thus it extended into the lot ninety-four feet from the edge of Water street. The right of way, condemned

in this proceeding, took a portion of the north end of this icehouse beyond any question.

The defendant testified that he did not know exactly, but he thought the old right of way, forty feet wide for the Tipton branch road, did not take any portion of this house, but Mr. Trent, who surveyed the land, testified that it took twenty-two feet of it and the right of way took sixteen feet more. On this point the court instructed the jury "that, after the condemnation of the strip of ground for the right of way for defendant's said railroad, the building on said right of way belonged to the plaintiff, and the defendant had no right to remove the same, and if the jury believe that there was and is an icehouse situated, in whole or in part, upon the strip of ground sought to be taken by the plaintiff for its right of way, then, in estimating the value of the land taken, the jury should take into consideration the value of said icehouse so taken, and the damages, if any, to the remainder thereof;" and refused to instruct that, "if the jury find from the evidence that a part of defendant Porter's icehouse is situated upon the right of way of the Boonville, St. Louis & Southern Railroad Company, then they are not to consider that part of said building in estimating the damages sustained by said defendant."

Here the court clearly committed error. If twenty-two feet or any other portion of the icehouse was on the old right of way, that much, and the damage done to the remainder by reason thereof, should not have been allowed in this action. The pleadings are not set out in this record, the case being brought here under the provisions of section 2253, Revised Statutes, 1889, and we cannot tell whether plaintiff sought to condemn *the icehouse and the materials composing it or not.* We can see how the company might seek to condemn the land on which the house stood, which would require its

removal, and not seek or desire to condemn the build-ing itself or the materials composing it. In other words, it might have use for the land only, and none whatever for the building, which it simply intends to destroy or remove, in order to utilize the land on which it stands for the operation of its road and the transac-tion of its business. In such case, it may petition the court to condemn the land, and confine compensation to the owner to the actual damage done in tearing down and removing the building, awarding the owner the building or materials; but upon a hearing the court could compel the company to pay for the building, in which case it would have the materials composing it. But, when a part of a building only is on the land appropriated, the difficulty of estimating damages is increased.

Here the icehouse is eighty-four feet long. Twenty-two feet of it, according to Trent's testimony, is on the old right of way, and sixteen feet more of it on the new right of way, making thirty-eight feet on both rights of way, and leaving forty-six feet still on defend-ant's land. Whether the twenty-two or twenty-eight feet can be cut off and removed, and leave the forty-six feet uninjured, except as the whole house is diminished in length, and except the expense of so cutting it off, does not appear by this record, nor does it appear who is to have the materials in the house on the right of way, if that part is severable from the remainder, nor who is to have the materials of the whole house, if it has to be entirely removed. The original taking of twenty-two feet of the building may have required the removal of the whole, and, if so, the chief damage was done by the appropriation of this twenty-two feet, and the taking of sixteen feet more increased the damage but slightly. Upon proper issues the court should instruct the jury as to the method of estimating the

damages to this house, and that they should allow nothing for the part covered by the old right of way and damage to the whole building caused by the part thus covered.

III. The court also erred in admitting, against plaintiff's objections, evidence that defendant had in the icehouse when the commissioners' report was filed in June, 1887, three hundred or four hundred tons of ice, worth $2 per ton. This was personal property, and was not condemned with the land, and could have been removed. *Bridge Co. v. Schaubacher*, 57 Mo. 582; *Railroad v. Pearson*, 35 Cal. 247; *In re Railroad*, 35 Hun, 306; *In re Railroad*, 35 Hun, 633.

If plaintiff had torn down the building at once, and deprived defendant of the right to remove his ice, or of an opportunity to sell it in the ordinary way, an action for its value could have been maintained; but defendant testified that the house had not been molested by plaintiff up to the time of trial; that he took the ice during the season for use on his boat, and that the reason he did not remove it all was because he had no sale for it, and that plaintiff never refused to let him take the ice or do as he saw fit with it. That being the case, we cannot see upon what fair or just principle the plaintiff ought to be required to pay for it. It is urged that this evidence did no harm, for the reason that the court, in its instructions, did not authorize the jury to allow anything for the value of the ice, but we think otherwise. When the evidence was offered, plaintiff objected to it on the ground that the condemnation of the land would not have the effect to condemn the ice, or authorize its appropriation by the plaintiff, and that it was not sought to condemn the ice, which objection the court overruled and defendant excepted. If the jury was not justified in concluding from this objection, and the ruling of the court thereon,

The State to use v. Mason.

that the appropriation of the land carried the ice with it, and that they had a right to take into the estimate of damages its value, then we are unable to understand the plain import of the English language. The evidence should have been excluded.

The judgment is reversed and the cause remanded for a new trial. All concur.