HATTIE E. GILBERT, Respondent, v. EVENS & HOWARD FIRE BRICK COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed February 5, 1924.

1. **ACTIONS EX DELICTO:** Blasting: Adjoining Property Injured: Negligence: Not an Essential Element: Liability. A party engaged in blasting must answer in damages for injury to property in proximity thereto which may have been caused by such blasting, and that regardless of the question of the degree of care which it exercised in so doing.

2. ———: ———: ———: Evidence: Whether Blasting Caused Damage to Building Question for the Jury. In an action for injury to property alleged to have been caused by blasting, evidence *held* to make the question of whether cracks in the walls of plaintiff's buildings were the result of the vibrations caused by defendant's blasting, or whether they were what is known as settling cracks, or cracks which had been caused by freezing of moisture absorbed by the concrete blocks out of which the buildings were constructed, one for the jury.

3. ———: ———: ———: ———: Testimony as to Effect of Blasting on Other Houses Similarly Located Admissible. In an action for injury done to property caused by blasting, where the issue as to whether the cracks in plaintiff's house and garage were caused by blasting or other causes, testimony as to the effect of blasting operations on another house 500 feet from plaintiff's property but with reference to the point where the blasting was being done was practically the same as that of the house and garage on plaintiff's property, *held* admissible.

4. DAMAGES: Caused by Blasting: Cost of Repairs to Buildings Not Limit of Damages Where Buildings Were Not Restored. In an action for injuries done to plaintiff's house and garage caused by blasting of the defendant, the total cost of repairs made by plaintiff *held* not a criterion in arriving at her damages where such repairs did not restore the damaged buildings.

5. ———: Excessive Damages: Injuries to House and Garage Caused by Blasting: Verdict of $1750 Not Excessive. In an action for injuries done to property caused by blasting, a verdict awarding plaintiff as damages $1750 *held* not excessive under the evidence.

Appeal from the Circuit Court of the City of St. Louis.—
        *Hon. Victor H. Falkenhainer,* Judge.

AFFIRMED.

*A. & J. F. Lee* and *Joseph Renard* for appellant.

(1 & 2) The demurrers to the evidence should have been sustained because, 1. The injury to the property could by reasonable inference have resulted from one of two or more causes, one of which would not render the defendant liable. Byerly v. Light, Power & Ice Co., 130 Mo. App. 603; Waldman v. Skrainka Const. Co., 249

S. W. 699; Kerr v. Busch, 215 S. W. 393; Warner v. Railroad, 170 Mo. 125. 2. The plaintiff failed to prove that defendant was guilty of negligence. Murphy v. City, 128 Mass. 396; Booth v. Railroad, 140 N. Y. 267; Johnson v. Railroad, 182 Mo. App. 349; Hoffman v. Walsh, 117 Mo. App. 278; Scalpino v. Smith, 154 Mo. App. 524; French v. Manufacturing Co., 173 Mo. App. 220. (3) Plaintiff's instruction on the measure of damages, and purporting to cover the whole case, is erroneous, because, 1. It fails to sumbit to the jury the question of defendant's negligence. (See authorities cited under Point 1.) 2. It is indefinite and misleading. 3. It is at variance with the pleadings and the evidence. 4. It is broader than the evidence. Rouse v. Fire & Marine Ins. Co., 203 Mo. App. 603; Stumpf v. United Railways Co., 227 S. W. 852; Hall v. Coal & Coke Co., In Banc, 260 Mo. 351; Greenstein v. Christopher & Simpson, etc., 178 S. W. 1179; Walker v. White, 178 S. W. 254. 5. The instruction told the jury to assess damages for the well if they found that the house and garage were damaged. (4) The admission in evidence of the testimony of Rachael Mawn was reversible error, because it purported to prove facts similar to those in issue without previously establishing that the existing conditions were identical. Osborn v. Eyster, 195 Mo. App. 520; Kirchgraeber v. Lloyd, 59 Mo. App. 59; 22 C. J., 752, 753. (5) The verdict is excessive, because the amount of the damage which plaintiff's testimony tended to establish was $590 while the verdict was $1750.

*Grant & Grant* for respondent.

(1) One who causes damage to the property of an adjoining property owner by blasting even on his own property is liable for such damage even though the blasting was done in a careful manner and there is no negligence. The injurious act is a trespass in which negligence is not a necessary ingredient. Johnson v. Railroad, 182 Mo. App. 349; Approved and followed in

Taylor v. Walsh, et al., 193 Mo. App. 516; Faust v. Pope, 132 Mo. App. 287. (a) In the case of blasting the duty is to blast in such a way as not to injure others in the storing or manufacturing of explosives the duty is to store the explosive or to conduct the plant so as not to injure others. French v. Manufacturing Co., 173 Mo. App. 220; Scalpino v. Smith, 154 Mo. App. 524. (b) One is liable for any injury which is the direct result of his blasting even though conducted without negligence. Hoffman v. Walsh, 117 Mo. App. 278, 286. (c) An injunction is proper to restrain defendant from so blasting as to throw stones on adjoining property and to jar plaintiff's buildings. Blackford v. Construction Co., 132 Mo. App. 157. The great weight of authority in other States sustains the rule in this State. Watson v. Mississippi River Power Co., 174 Iowa, 23; Louden v. Cincinnati, 90 Ohio St. 144, L. R. A. 1915, E 356; Hickey v. McCabe, 30 R. I. 346, 27 L. R. A. (N. S.) 425; Fitzsimons & Connell Co. v. Braun & Fitts, 199 Ill. 390, 59 L. R. A. 421; Longtin v. Persell, 30 Mont. 306, 65 L. R. A. 655; Patrick v. Smith, 75 Wash. 407; Colton v. Onderdonk, 69 Cal. 155; Bradford Glycerine Co. v. Manufacturing Co., 60 Ohio St. 560; City of Muskogee v. Hancock, 158 Pac. 622; and in England Fletcher v. Rylands, L. R. 1 Ex. 265, L. R. H. L. 330. (2) In the case at bar the defendant was a mere lessee taking out the clay for its own profit. The reasons upon which public service corporations or their contractors have escaped liability on the ground that the blasting was necessary to adapt the land to the public purposes for which it or the easement enjoyed was given them, do not apply here. (3) Plaintiff's instruction given by the court did not authorize any finding on account of damage to the well. Defendant's instruction (No. 4) expressly instructed the jury that there could be no finding in plaintiff's favor on this point. So the well was out of the case. (4) The verdict was less than the actual damage suffered by plaintiff on account of injuries to house and garage.

BECKER, J.—Plaintiff recovered a judgment in the sum of $1750 against the defendant in an action for injury done to her property alleged to have been caused by blasting of the defendant, which is a corporation and was engaged in the business of mining clay under the surface of the ground in the proximity of plaintiff's real estate.

Defendant, who in due course brings this appeal, urges as its first point that the trial court erred in not sustaining defendant's demurrer to the evidence at the close of the case because, (a) the injury to plaintiff's property, according to the evidence, could by reasonable inference have resulted from two or more causes, for one of which the defendant would not be liable, and (b) that plaintiff failed to prove that the defendant was guilty of negligence.

We address ourselves to the question of whether the plaintiff, though her petition alleges negligence on the part of the defendant, was required in an action such as this to prove negligence.

Irrespective of what the rule may be in other jurisdictions the rule approved by the Kansas City and Springfield Courts of Appeal of this State, is that blasting is an absolute necessity in excavating through beds of rock, in mining, in digging wells, in excavating foundations for buildings, in improving roads and streets, in digging canals, in building railways and in doing many other things and is not under all circumstances to be regarded as a nuisance *per se* and condemned as being negligent as a matter of law. On the other hand it must be regarded as a work which one proprietor may lawfully do upon his own land, provided he takes due care to avoid injuring persons or property in the vicinity and subject to his obligation to pay damages for any injury which he does in case his blasting involves a direct invasion of the premises of an adjacent proprietor. [Hoffman v. Walsh, 117 Mo. App. 278, 93 S. W. 853; Faust v. Pope, 132 Mo. App. 287, 111 S. W. 878; Scalpino v. Smith, 154 Mo. App. 524, 135 S. W. 1000; Johnson v. Railroad, 182

Mo. App. 349, 170 S. W. 456; Taylor v. Walsh, 193 Mo. App. 516, 186 S. W. 527.]

In the Scalpino case, supra, which was an action to recover damages for personal injuries inflicted by an explosion of dynamite, the point was directly raised that since plaintiff's petition, by specific allegations, based her right to recover on the negligence of the defendant, and since plaintiff failed to establish by proof the specific acts of negligence charged in her petition, the demurrer to the evidence should have been sustained. The court, in its opinion, held that the action was one *ex delicto* wherein the real cause is not negligence "but a different tort of which negligence may be an ingredient but is not an essential element, the averment of negligence should be regarded as immaterial and the pleader should not be held to proof of that which forms no essential part of his cause of action. Such is the view we expressed in Hoffman v. Walsh, 117 Mo. App. 287, 93 S. W. 853, where we said: "The case does not fall within the rule that where specific acts of negligence are alleged the plaintiff is restricted to his allegations in making out his case. It comes under the different rule that, where it is not necessary to allege negligence, it is not necessary to prove it."

The above doctrine appeals to us as sound and we rule that the defendant must answer in damages for the consequences, if any, to plaintiff's property which may have been caused by the blasting on the part of the defendant, and that regardless of the question of the degree of care which it exercised in so doing.

As to the contention that defendant's demurrer should have been sustained in that the injury to the property under the evidence adduced could by reasonable inference have resulted from two or more causes, for one of which the defendant would not be liable, the point is without merit.

Plaintiff adduced testimony that she was the owner, since 1907, of three contiguous lots facing north on the Creve Coeur Lake Railroad; that she owned a seven-

room house, built of concrete blocks, which was built upon the middle lot; that at the rear of the house she had built a garage with a loft and shingled gable roof; that the defendant company held a large tract of land immediately south of plaintiff's property under lease which it used for mining clay; that during the years 1918, 1919 and 1920 the defendant company was operating its mine for fire clay immediately south of plaintiff's premises; that the north tunnel of this mine or entrance, was fifty-seven feet from the south line of plaintiff's property; that the method of mining the clay by the defendant was to drill holes into the clay into which the miners inserted charges of black blasting powder; that each charge consisted of about one and one-half pounds of powder. The holes were tamped and the charge exploded. Each blast, if successful, loosened about four tons of clay. Blasting was done at the noon hour and again at the close of the work in the afternoon. Many blasts were shot each day and an effort was made to time the fuses so that successive blasts would result. The testimony further showed that during the years 1918, 1919 and 1920 there were no earthquakes or like disturbances of the earth's surface in that locality; that various shocks preceded by explosions were felt by the tenants living on the plaintiff's property during the years 1918, 1919 and 1920; that prior to the time these explosions were heard and the shocks felt, the house and the garage on plaintiff's property were in good condition and the walls thereof free from cracks, but that during the period of time adverted to above, the north wall of plaintiff's garage bulged out and fell down and the roof thereof slid to the ground and the east wall cracked from top to bottom; that cracks also developed on the outside and inside walls of plaintiff's house.

A witness named Mallow, who was a tenant on plaintiff's property, testified that at times when he was repairing his automobile in plaintiff's garage and was lying on his back underneath his machine he felt as if he was being lifted off of the floor by the force of the explosions.

This witness also testified that he "felt jars in the house;" that sometimes the jars were heavy enough to "lift your feet off the floor; that mortar from the plaster would trickle down inside of the walls from these vibrations;" that in February, 1919, standing in the reception hall facing west he "saw a crack in the wall that we could see daylight clear through the building;" that there was also a crack in the west wall of the kitchen from the second floor window all the way down to the basement window and that a crack opened at the west side of the chimney on the south side of the building; that this latter crack was wide enough that "you could put a lead pencil in it." This witness on cross-examination testified that up until February, 1919, he had never seen any cracks in the house or in the garage, and when asked whether the effects of the blasts were serious enough to move things about in the house he stated that they were in the year 1918; that "dishes would rattle on the table and rock on the top of the table—the saucers would." On re-direct examination the witness stated that the cracks he described in the walls of the house and garage could not have been "settling cracks."

John S. Gilbert testified that he married plaintiff in September, 1919, and that in January or February, 1920, he made an examination of the house and garage on plaintiff's property and found that the front wall of the garage was bulging out toward the north and that the east wall had a crack from the "bottom clean up to the top;" that the west wall of the house "was such that you could see out through from the stairway and that there were numerous other cracks and that in some places the walls and windows were cracked; that some of the tile above the porch were cracked."

One C. E. Bennett testified he was in the real estate business and handled plaintiff's property, and he examined the house in question at plaintiff's request in the early part of 1919 and found several cracks in the walls thereof, one of the most prominent was in the reception hall; that "you could look right from the stairway and

see outside through the crack. It was at least one-fourth inch wide—wide enough to see daylight—there were other cracks in the north end below the window. On the west side in the kitchen there were cracks from the basement up to above the second story window. Those were straight cracks.''

On cross-examination he testified that the cracks he saw in the walls of the house were not settling cracks; that a ''settling crack never cracks straight.''

On re-direct examination he stated that he had seen the house after it had been tuckpointed to repair the cracks in the walls thereof; that the ''cracks in the house are still apparent in spite of tuckpointing because you cannot match up the cement; the house cannot be restored to the condition that it was in before the cracks occurred because it would be necessary to take all of the blocks out that were cracked and replace them, but that would show a patched building because it is not possible to match the concrete blocks.'' He further testified that such repairs if made would depreciate the value of the property.

Plaintiff herself testified that she began leasing the premises in question to tenants in 1916, up to which time she had felt no shocks from blasting but that complaints were made to her about blasts in the vicinity of the premises in the winter of 1918; that in the spring of 1919 she went and examined the property and found the front of the garage bulging and several cracks in the walls of the house; that late that winter the garage got into an untenantable condition and she had had it repaired; had ten feet taken off and the flat roof put on it so that it could be used, but did not have it restored. She testified that the cost of the repairs she made to the garage amounted to $245. She also had the house tuckpointed at the places where there were cracks in the walls but nowhere else; that the cost of the tuckpointing was $597; that she had no repairs made to the interior of the house. She further testified that she had taken bids to restore the garage and that the lowest bid was $1000;

that she had received a bid from a construction company for restoring the house to its original condition and that the bid was $1500.

H. B. Dorsey testified that he was a contractor and builder; that he had given plaintiff the bid of $1500 to make the necessary repairs in the way of restoring the house and that $1500 was the reasonable cost thereof. In his judgment the reasonable cost of restoring the garage was between six and seven hundred dollars.

Having in mind the rule set out above, as in our judgment being applicable to the case in hand, there can be no question but that plaintiff adduced sufficient testimony to warrant the submission of her case to the jury, nor can plaintiff's right in this respect be affected by the testimony offered on the part of the defendant tending to prove that plaintiff's garage was in a bad state of repair long prior to the year 1918 and that the cracks that had developed in the walls of the garage and house were either settling cracks or cracks which had been caused by the freezing of the moisture absorbed by the concrete blocks out of which the buildings were constructed; that the powder used by the defendant in blasting was not a high explosive and that each of the charges contained but one and one-half to two pounds of powder and that each charge was shot off separately and that a witness living in a house closer to defendant's mine than that of plaintiff, felt no shocks or vibrations as the result of the blasting done by defendant; that an actual experiment of blasting had been made as is done in the usual course of defendant's business, and that whatever vibrations, if any, were caused thereby were imperceptible on the surface of the property immediately above the place where the blast was shot off.

The main issue in the case was whether the cracks in the walls of plaintiff's buildings were the result of the vibrations caused by defendant's blasting or whether they were what is known as "settling cracks." Under these circumstances with the testimony adduced as we have outlined above, this case clearly does not come with-

in the purview of the rule that plaintiff fails to make a case where the injury complained of might have resulted from two or more causes for one of which the defendant is liable and the other not, and the testimony in the case is such that the jury must speculate or guess as to which one of the two did in fact cause the injury.

It follows from what we have said above that defendant's demurrer offered at the close of the case was well ruled.

The trial court did not err in admitting the testimony of the witness Rachael Mawn. A close reading of her testimony discloses that without objection she was permitted to testify that she lived five hundred feet from plaintiff's property in a frame house and that she felt "jars of explosions" in her house in the years 1918 and 1919 and that three windows were broken in her house. At this point in her testimony the witness was asked as to whether any portion of her house had cracked and then for the first time counsel for defendant interposed the objection: "I don't think that is evidence, your honor. I object to that as incompetent." After some colloquy between counsel and the court, counsel for defendant renewed his objection in the words: "Now, we object to that, if your honor please, as incompetent and irrelevant." The court stated that he was satisfied from the testimony adduced that the location of the witness' house with reference to the point in defendant's mine where the blasting was being done was practically the same as that of the house and garage on plaintiff's property and overruled the objection. The witness then testified that several cracks appeared in the walls of her house along in 1918 and 1919.

We are satisfied from a reading of the entire record that the location of the witness Mawn's house with reference to the location of the defendant's mine, for practical purposes, is the same as that of the house and garage on plaintiff's property and for that reason the action of the trial court in overruling the objection, in our view, was proper.

We note in this connection that the objections offered were merely, "I object to that as incompetent. . . . We object to that . . . as incompetent and irrelevant." Objections of this nature have frequently been held as "no objection at all," and as too indefinite to avail on appeal. [Gayle v. Car & Foundry Co., 177 Mo. 427, 76 S. W. 987; State v. Wright, 134 Mo. 404, 35 S. W. 1145; Three States Lumber Co. v. Rogers, 145 Mo. 445, 46 S. W. 1079; Kettlehake v. Car & Foundry Co., 171 Mo. App. 528, 153 S. W. 552.]

As to the assignment of error that the verdict is excessive, we are satisfied from a reading of the record that the testimony adduced on plaintiff's behalf in support of the amount of damage which she alleged she sustained, if believed by the jury, was sufficient to sustain the verdict rendered by them. It is true that the plaintiff testified as to certain repairs which she had made, the aggregate cost of which fell short of the sum arrived at by the jury in their verdict. The total cost of the repairs made by plaintiff however is not the criterion in arriving at plaintiff's damages in that she specifically testified that she did not *restore* the garage but that she shortened the garage ten feet and put a flat roof over it so as to make it usable by her tenant, and she was permitted to testify, without objection, that a contracting firm had made her a bid to *restore* the garage for the sum of one thousand dollars. And a contractor testified that in his judgment the reasonable cost of restoring plaintaiff's garage would be six or seven hundred dollars. As to the repairs on the house plaintiff testified that she merely had the exterior walls of the house tuckpointed but did not have the broken concrete blocks replaced by new ones, nor did she have any repairs made to the inside of the house. A contractor adduced by plaintiff as a witness, without objection, was permitted to testify that he had made plaintiff a bid for restoring the house at a cost of fifteen hundred dollars; that fifteen hundred dollars was a reasonable sum for doing such necessary work. In light of this situation we must rule that the verdict is not excessive.

As to other assignments of error which have been set out in appellant's brief, they are either answered by what we have already ruled herein or do not in our judgment require specific rulings in this opinion. The judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Daues, J.,* concur.