STATE OF MISSOURI at the Relation of the STATE HIGHWAY COMMISSION, Relator, v. ARGUS COX, WALTER E. BAILEY and ROBERT J. SMITH, Judges of the Springfield Court of Appeals.—77 S. W. (2d) ·116.

Division Two, January 7, 1935.

*John W. Mather* and *Jean Paul Bradshaw* for relator.

274

*C. W. Hamlin* for respondents.

WESTHUES, C.—This case, coming to the writer on reassignment, is a certiorari proceeding instituted by relator to quash an opinion of the Springfield Court of Appeals in the case of State ex rel. Highway Commission v. Freehold Inv. Co., reported in 52 S. W. (2d) 577, on the theory that the opinion is in conflict with controlling decisions of this court.

The whole of the opinion has been challenged. It reads as follows:

"This is a proceeding by the State Highway Commission to condemn ten feet along the south side of a tract of land belonging to defendant. The chief value of this land is its value as a part of a rock quarry. On trial by jury in the circuit court, a verdict was returned for plaintiff with a finding also that defendant was not entitled to any damages. This verdict was set aside by the trial court and a new trial awarded because, as stated by the court in the order sustaining the motion for new trial, error was committed by the court in giving and refusing certain designated instructions. Plaintiff appealed.

"Running east and west through the city of Springfield, near its

north boundary, was a public street known as Kearney Street. This street was sixty feet in width, unimproved and traveled very little. The State Highway Commission in routing Highway No. 66 through the city of Springfield, routed it over Kearney Street. To do this and make it conform to the requirements of the law as to this highway, it was necessary to increase its width from sixty to eighty feet. This it did by condemning ten feet on each side of the original Kearney Street. The ten feet on the north side of Kearney Street was taken off the south side of defendant's land and, as stated, the jury allowed defendant no damages. The State had improved the highway along Kearney Street before the trial, and in doing so had laid a concrete slab twenty feet wide in the center of the eight feet This placed the concrete slab in what was Kearney Street before it was taken over by the Highway Commission.

"Defendant's evidence tended to show that, in order to work the rock quarry, it was necessary to do it by blasting the rock out of its place by large blasts, and, as a result, the rock blasted out would be largely in large chunks that would have to be broken by smaller blasts called 'popshots.' That in doing this blasting, spalls, or small stones, would fly in every direction and some of them would fly over on the highway and of course would fly on Kearney Street before the Highway Commission took it over. It was also shown by defendant that, after the concrete slab was laid, the blasting in the quarry, if it were operated, would likely cause damage to the slab of concrete laid in the highway. That converting Kearney Street into an improved state highway with a concrete roadway would and did greatly increase the travel over said street and by reason of the great amount of travel there would be greater danger of injury to persons or property on the highway for which defendant would be held liable as well as the likelihood of injuring the concrete slab for which defendant might also be liable. That if defendant undertook to avoid injury, it would have to muffle its shots and make them smaller to prevent injury to the concrete and build a fence to protect travel on the highway and all this would make the operation of the quarry much more expensive and these items would reduce the market value of the quarry. Had Kearney Street not been taken over and widened and improved but had been left in its original condition, there would have been no concrete slab to be injured and the danger of travel on the street would have been slight and for that reason the quarry was much more valuable before the street was taken over and improved by the Highway Commission than it was afterward. This evidence was objected to by plaintiff and court overruled the objection. Later, the court recalled its ruling and sustained the objection and excluded the testimony from the consideration of the jury. When the instructions were given to the jury, instructions were given on the theory

that this evidence was not admissible and that the danger to travelers on the highway and danger of injury to the concrete slab should not be considered by the jury in determining the question of damages to defendant for the taking of the ten feet strip of this land. The court sustained the motion for new trial on the ground that it was error to give these instructions and that error was also committed in refusing an instruction asked by defendant to the effect that in estimating defendant's damages, they should consider the uses to which the quarry could be put and should not consider the fact that the quarry was, at the time of the trial, not being operated.

"The refusal of the last-mentioned instruction would justify the court's action in sustaining the motion for a new trial. It is not the use being made of property at a given time that determines its value, but the uses to which it is adapted. [St. Louis v. Hill, 116 Mo. 527, 533, 534, 22 S. W. 861, 21 L. R. A. 226; Prairie Pipe Line Co. v. Schipp, 305 Mo. 663, 267 S. W. 647; Mississippi & R. River Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, 208.]

"On the other question of the danger of injury from blasting, it seems that defendant, if it operated the quarry, would be liable for such damages regardless of the question of negligence. [Gilbert v. Evens & Howard Fire Brick Co., 214 Mo. App. 207, 260 S. W. 790; Blackford v. Heman Constr. Co., 132 Mo. App. 157, 162, 112 S. W. 287.]

"To meet the contention that danger of injury from blasting should be considered as affecting the value of the quarry, it is said that laying the concrete slab in the center of Kearney Street as it was at the time is not subjecting the street to a new servitude and hence no damages could be allowed to an adjoining landowner. That position is correct when a street is not widened and the improvement is for the public good and the use of the street as a street is not affected. [Julia Bldg. Assn. v. Bell Telephone Co., 88 Mo. 258, 57 Am. Rep. 398; Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' Ry., 230 Mo 59, 63 et seq., 130 S. W. 288; Placke v. Union Depot Railroad, 140 Mo. 634, 637, 41 S. W. 915; Chicago Great Western Ry. Co. v. Kemper, 256 Mo. 279, 166 S. W. 291, Ann. Cas. 1915D, 815.]

"The general rule is, that the measure of damages in condemnation proceedings is the damage to the whole tract of which the land taken is a part. It is extremely difficult, if not impossible, to fix a rule as to things to be considered in estimating damages that will apply to all cases. Each case must rest largely upon its own facts and in a case of original taking of the entire strip to be occupied by a highway where none existed before, any fact resulting from the taking which will affect the value of the tract as a whole and does not similarly affect others in the same neighborhood, whose lands are not taken should be considered. Had Kearney Street not

been there and the whole eighty feet had been taken to open a new highway, we are clearly of the opinion that the evidence excluded in this case would have been admissible and the effect on the value of the quarry as a quarry, if it did affect its value, would be a proper matter to be considered. The difficult question in this case arises from the fact that Kearney Street was already open before the Highway Commission took it over and converted it into a part of U. S. Highway 66. It is argued with much force that since Kearney Street was already open and defendant already liable to pay damages if, in the operation of the quarry, it should throw stones on this street that would cause injury, the improvement of the street in such a way as to increase the travel on it and thereby increase the danger of injury from flying stones was not a damage to defendant's land that could be made the basis of recovery by it. We should be disposed to hold to that view had the street not been widened and the improvement had been made in the original street alone. but in this case the Highway Commission could not do that. To make it a part of Highway 66, it had to widen it from sixty feet to eighty feet. This was done so it could lay the concrete slab and build the proper shoulders at the side and comply in all respects with the law. Had the street not been widened as was the case in Placke v. Union Depot Railroad. and Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' Ry. Co., cited above, then appellant's position would be right. But suppose in the cases cited. the street had been so narrow that the street car line or the railroad could not have occupied the street without destroying its ordinary use as a street and the city had widened the street in order to secure room so it could permit the use of the street for street car or railroad purposes, would not the adjacent landowner, a part of whose property was condemned in order to widen the street for the purpose of establishing a car line or railroad track. in the street. be entitled to have the presence of the car line or railroad considered in computing the damage to the remaining part of his land if those things did. in fact, lessen the value of his land? We think he would. So in this case when the Highway Commission took over Kearney Street and completely changed it by widening it and then transformed this sixty-foot dirt road in connection with the additional twenty feet condemned into a paved highway. the change being so complete that the original unimproved dirt road in Kearney Street was obliterated and a new highway, which measured up to the standard fixed by the law, put in its place. and, if that change, in fact, lessened the value of. defendant's quarry so that it was of less value after the road was completed than it was when the original unimproved Kearney Street was there, the defendant should be permitted to show that fact and have the decrease in value con-

sidered by the jury in determining the amount of defendant's damages.

"The measure of damages would not be the same as it would be had there been no street there and the commission had condemned the entire eighty feet, but would be limited to the increased loss of value caused by the change as above indicated.

"We think the trial court was right in sustaining the motion for new trial, and what we have said should be a sufficient guide for giving correct instructions to the jury in another trial.

"The judgment will be affirmed.

"*Bailey* and *Smith, JJ.,* concur."

█ The holding of the Court of Appeals that the refusal of an instruction, asked by defendant, "landowner" to the effect that in estimating defendant's damages the jury should consider the uses to which the quarry could be put *and should not consider the fact that the quarry was at the time of the trial not being operated,* justified the trial court in granting defendant a new trial, conflicts with the principle of law announced by this court in the following cases: Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, l. c. 418, 419, 94 S. W. 860; Mo. Pac. Ry. Co. v. Porter, 112 Mo. 361, 20 S. W. 568; Chicago, S. F. & C. Co. v. McGrew, 104 Mo. 282, 15 S. W. 931. The Walsh case followed the ruling of the Porter and McGrew cases, supra. In the Porter case this court stated the rule of damages as follows:

" 'So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, *having regard to the existing business or wants of the community,* or such as may be reasonably expected in the immediate future.' " (Italics ours.)

In commenting on certain evidence pertaining to the market value the court further said:

"The court, in the case at bar, as to the measure of damages, substantially instructed the jury in compliance with these general rules; but we think the witnesses were permitted, in some respects at least, to base their estimate of the damages to the part of defendant's land not taken upon erroneous principles. The difference in the market value of the property for the uses to which it is adapted, before and after the appropriation, is the true criterion of the damages sustained. In this instance, however, many of the witnesses stated the difference in the value of the ferry, with and without the railroad, whereas they should have been confined *to the market value of the land, for all purposes to which it had been put, or for which it was* suitable." (Italics ours.)

The fact that the quarry was not being operated may have had an effect on its market value. If operation ceased because the business or wants of the community did not justify the operation of the quarry it most certainly must have affected its market value. Under the cases cited the instruction was erroneous and properly refused by the trial court because it prohibited the jury from considering the existing business or wants of the community.

The Missouri cases cited by the Court of Appeals do not support its ruling but are in harmony with the ruling announced in the Walsh, Porter and McGrew cases. These later cases followed the ruling in the Mississippi & Rum River Boom Co. v. Patterson, 98 U. S. 403, l. c. 408, 25 L. Ed. 206, also cited by the Court of Appeals. In the Patterson case the United States Supreme Court held that:

"Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated."

That ruling does not justify the instruction asked for in the case at bar. It is true that property available for certain uses, although not used for that purpose at the time of the condemnation proceeding, may be shown for the purpose of fixing its market value. This court has so ruled in the cases cited above. In the case at bar, however, the owner had operated the quarry and the jury had a right to consider in fixing its market value the fact that the operations at the quarry had ceased. Suppose we look at the other side of the picture and for argument's sake assume that the quarry had been operating and doing a thriving business at the time of the condemnation, would the condemner have been entitled to an instruction telling the jury not to consider, in fixing its market value, the fact that the quarry was at the time a growing profitable business? Most certainly not. The United States Supreme Court in Mississippi & Rum River Boom Co. v. Patterson, supra, also said:

"The compensation to the owner is to be estimated by reference to the uses for which the property is suitable, *having regard to the existing business or wants of the community*, or such as may be reasonably expected in the immediate future." (Italics ours.)

Relator further contends that the second part of respondents' opinion, wherein it held that the danger of injury from blasting, due to an increase of travel upon the street by reason of surfacing it with a concrete slab, was a proper element of damages, is in conflict with certain decisions of this court. Respondents, by their opinion ruled that had the existing street not been widened the danger of injury to the public and the concrete slab, by flying

stones due to blasting in the quarry, would not have a proper element of damages. The opinion discloses that the traveled portion of the new highway, as contemplated, will be entirely confined within the old boundary line of Kearney Street. The strip of ten feet condemned on each side of the street will be devoted to shoulders and drainage ditches. The Court of Appeals ruled that since the State condemned a strip of ten feet in order to widen the highway the same rule applied in this case as if ground for the entire highway had been condemned. This ruling we deem to be clearly erroneous and in conflict with opinions of this court presently to be noted.

It must be borne in mind that the owner of the quarry had no right whatever, under the existing conditions before this condemnation proceeding was instituted, to operate a quarry so as to be dangerous to the traveling public upon Kearney Street. The Court of Appeals so ruled citing Gilbert v. Evens & Howard Fire Brick Co., 214 Mo. App. 207, 260 S. W. 790; Blackford v. Heman Const. Co., 132 Mo. App. 157, 112 S. W. 287. The owner of the quarry was entitled to compensation for the ten feet of ground taken and to damages sustained to the tract of land remaining by reason of a decrease, if any, in its market value. But in considering the difference in the market value of the remaining tract the trial court properly excluded from consideration the elements of danger of injury from blasting to the concrete slab and the traveling public upon Kearney Street. The improvement of the street and the increase of travel naturally following such an improvement cannot be considered an additional burden. A street is a passageway established by proper public authority for pedestrian and vehicular traffic. That is its primary purpose. When a street is once established the authorities may subject it to any use consistent with its purpose and the adjoining property owner cannot complain. [Julia Bldg. Assn. v. Bell Telephone Co., 88 Mo. 258; Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' Ry. Co., 230 Mo. 59, 130 S. W. 288.]

The opinion of the Court of Appeals attempted to distinguish the case at bar from the cases cited because the street was widened. That fact, however, did not add any new burden or change the character of the use for which the street within its original boundaries was primarily established. The owner of the quarry had just as little right to so conduct the operation of the quarry as to throw rocks upon Kearney Street before as after the condemnation of the ten-foot strip. In Julia Bldg. Assn. v. Bell Telephone Co., supra, the plaintiff attempted to enjoin the building of a telephone line on a street abutting its property. This court in denying the injunction had the following to say:

"I think it may be safely affirmed that all the authorities, to which we have been cited by counsel on both sides of this case, agree, that when the public acquires a street, either by condemna-

tion, grant or dedication, that it may be applied to all uses consistent with, and not subversive of the proper uses of a street, and not inconsistent with the uses contemplated in the dedication, grant or condemnation, and that it is only when the street is subjected to a new servitude, inconsistent with and subversive of its use as a street, that the abutting owner can complain.''

So the owner of the quarry in this case was entitled to only such damages as resulted from the taking of the ten-foot strip without taking into consideration the fact that Kearney Street, as it existed prior to the condemnation, would be improved, which improvement would cause an increase travel upon the highway. The rule announced in the Bell Telephone case applies to this case.

The opinion of the Court of Appeals is in direct conflict therewith and it follows that the record and opinion of the Court of Appeals must be quashed. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.