Accomac Realty Company, Appellant, v. City of St. Louis and State Highway Commission.—152 S. W. (2d) 100.

Division Two, June 10, 1941.

Williams, Nelson & English for appellant.

*E. H. Wayman, Oliver Senti* and *Louis A. McKeown* for respondents.

**1226**

WESTHUES, C.—Plaintiff in its petition asked damages in the sum of $150,000 for alleged depreciation in value of its property, caused by a change in the grade of Kingshighway in the city of St. Louis, Missouri. The case was tried before a jury, resulting in a verdict and judgment in the sum of $14,280. From that judgment plaintiff appealed.

The only point briefed by appellant pertains to the admission of certain evidence. The statement of the case may therefore be brief. For an understanding of the issues it will suffice to quote portions of the statements from appellant's and respondent's briefs. Appellant makes the following statement:

"This is a suit by the Accomac Realty Company to recover damages to its property on South Kingshighway in the City of St. Louis, caused by the change of grade in front of its property as a result of the construction of the viaduct over the Missouri Pacific Railroad at Kingshighway. The case was tried to a jury and at the close of the whole case a demurrer to the evidence was sustained as to the defendant State Highway Commission of Missouri. The Court at the same time instructed the jury that their verdict should be in favor of the plaintiff and against the defendant City of St. Louis, so that the only question submitted to the jury was the amount of damages. The jury rendered a verdict in favor of the plaintiff and against the defendant City of St. Louis for twelve thousand seven hundred and fifty dollars damages, with interest thereon at six per cent (6%) per annum from October, 1937, to October, 1939, amounting to one thousand five hundred and thirty dollars ($1,530.00), and on said verdict judgment was entered in favor of the plaintiff and against the defendant for fourteen thousand two hundred and eighty dollars ($14,280.00) and costs."

In respondent's brief we find the following:

"Plaintiff's land in question consisted of two parcels on opposite sides of Accomac Street, bounded on the west by Kingshighway Boulevard. The one to the north of Accomac Street was practically square, being City Block 4095, with the northwest corner abutting the Missouri Pacific Railroad. The other portion was south of Accomac, being City Block 4094, irregular in shape and extending from Kingshighway Boulevard through to Vandeventer Avenue. Plaintiff's petition pleaded consequential damage to this property by reason

of the construction of the viaduct in Kingshighway by the Missouri State Highway Commission. The Missouri State Highway Commission had constructed the viaduct under order of the Public Service Commission and a permit of the City of St. Louis. The City agreed with the Highway Commission to furnish the right-of-way and to stand the cost of consequential damage, if any, by reason of the construction. . . .

"Aside from the legal questions involved, practically the sole question of fact in the case devolved around whether or not the property was susceptible to or adaptable for retail use or industrial use before the construction of the viaduct. Plaintiff's valuation experts placed the difference in value before and after the viaduct on the basis that the property had been used and could have continued to be used for retail purposes, thereby giving a greater value to the property than for industrial purposes, and that the difference between the value of the land fronting on Kingshighway for retail purposes and the value of the property for industrial purposes represented the damage caused by the erection of the viaduct. On the other hand, defendants' evidence was to the effect that the trend in real estate for retail purposes had long since passed that section of the city, and the property had for some years past been industrial, and would continue to be industrial property and that the erection of the viaduct would have little or no effect upon its value or use for industrial purposes."

Plaintiff's witnesses placed the damages to the property, caused by the building of the viaduct, from about $60,000 to $70,000. The defendant's witnesses fixed the damages at a figure of from $6,000 to $12,000. Plaintiff introduced evidence in support of its theory that the property had a value for retail business purposes, while the defendant introduced substantial evidence that the property could best be utilized for industrial purposes and that it had no value for retail business. The error complained of arose in the following manner. The Julius Seidel Lumber Company had been doing a retail lumber business on plaintiff's property here in question since the year 1902. Julius Seidel was the president of the plaintiff company as well as of the Julius Seidel Lumber Company. In 1934 Seidel, as an intervenor, filed a petition in a receivership suit wherein he asked for the appointment of a receiver of all the property owned by the lumber company. In that petition it was alleged that the company had been losing money at the retail yard which was located on the property owned by plaintiff and which was alleged to have been damaged by the erection of the viaduct. The defendant, on a number of occasions, while plaintiff was offering evidence, attempted to get evidence before the jury that the president of the plaintiff company had made the statement, in a petition filed in the receivership suit of the lumber company, that the lumber company had been

losing money in the retail business at Kingshighway. The trial court sustained the objection made by plaintiff to this evidence. Julius Seidel was not called as a witness by plaintiff. When the defendant introduced its evidence Julius Seidel was called as a witness and examined by the defendant. He was asked about the allegations in the petition in the receivership suit. Later the petition itself was offered in evidence by the defendant. Plaintiff strenuously objected to the introduction of this evidence, but the trial court at this stage of the trial overruled the objections. We are of the opinion that the evidence was not competent to prove any issue then before the court. Respondent in its brief stated the issue tried to be as follows:

". . . the sole question of fact in the case devolved around whether or not the property was susceptible to or adaptable for retail use or industrial use before the construction of the viaduct."

The sole question then before the jury was, how much, if any; did the building of the viaduct reduce the market value of plaintiff's land? Evidence that a retail business located on the property was profitable, or that the business lost money, was not competent evidence as affecting the value of the real estate. [Gauley & Eastern Ry. Co. v. Conley et al., 100 S. E. (W. Va.) 290, 7 A. L. R. 157.] In the annotations in A. L. R., beginning at page 164, we find the following statement:

"With remarkable unanimity the American jurisdictions hold that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value of the property in condemnation proceedings."

Many cases from various states are cited in support of the text. [See also Orgel on Valuation Under Eminent Domain, page 529, sec. 161; 2 Lewis, Eminent Domain (3 Ed.), sec. 727; Sauer v. Mayor of City of New York, 60 N. Y. Supp. 648.] In the latter case the court said:

"The profits of a business are too uncertain, and depend on too many contingencies, to safely be accepted as any evidence of the usable value of the property upon which the business is carried on.

"Profits depending upon the times, the amount of capital invested, the social, religious, and financial position in the community of the one carrying it on, and many other elements which might be suggested. What one man might do at a profit, another might only do at a loss. That the plaintiff had made profits in his business in the past was no indication that he would continue to make them in the future, even had the viaduct not been constructed."

Respondent, as authority to sustain its contention, cited the case of State ex rel. v. Cox, 336 Mo. 271, 77 S. W. (2d) 116. We do not deem that case in point. It was a suit, by the owner of a rock quarry, to recover damages resulting from the widening of a roadway. An

instruction was asked informing the jury not to "consider the fact that the quarry was at the time of the trial not being operated." We held that the instruction was properly refused on the ground that evidence showing the quarry was not being operated was competent in considering the existing demands or wants of the community for a business of that nature. In the case at bar respondent introduced similar evidence in that it offered evidence to show that in the vicinity of plaintiff's property retail stores were vacant. That evidence was introduced as tending to show that there was no demand for retail business stores in the vicinity of plaintiff's property. We rule, therefore, that the case of State ex rel. v. Cox, supra, is not in point on the question before us. It is a well known fact, as pointed out in a number of cases and by text-writers on this subject, that a business failure may occur when conducted by one individual while another may be very successful in the same building and under similar circumstances. Upon another trial of this case the receivership suit and matters pertaining thereto should not be referred to in the evidence.

■ Appellant also objected to the introduction of this evidence, because the statements made in the intervening petition filed in the receivership suit were made in a case in which the plaintiff was not a party, and therefore any statements made in that petition were not binding on the plaintiff corporation. Since we have ruled that the evidence was not admissible for any purpose we need not discuss this point at length. [See Meyer v. Dubinsky Realty Co., 133 S. W. (2d) 1106, 1. c. 1110 (10, 11); St. Charles Savings Bank v. Denker, 275 Mo. 607, 205 S. W. 208, 1. c. 210 (1) (2); 22 C. J., page 336, sec. 378.] These authorities sustain appellant's position.

■ Again, respondent contends that appellant waived any objection to the questioned evidence. When respondent offered to read to the jury portions of the petition filed in the receivership suit, appellant asked that all of it be read. That is the basis of the waiver contention. After appellant's many and varied objections to the introduction of the evidence had been overruled, the record shows the following to have occurred:

"Mr. McKeown: I want to read in evidence the intervening petition of Julius Seidel, stockholder of the Julius Seidel Lumber Company, in the Circuit Court of the City of St. Louis, State of Missouri, in the case of United Bank & Trust Company, a corporation, against Julius Seidel Lumber Company, a corporation, defendant, Julius Seidel, intervenor. Are you going to object to me reading the whole statement?

"Judge English: I object to you reading any part of it unless you read the whole thing.

"Mr. McKeown: All right, I will read the whole thing."

We do not think counsel waived his objection made to this evidence.

1230

When the above occurred the court had permitted the petition to be introduced in evidence. It was lengthy, and counsel for plaintiff had the right to insist that all of the petition be read to the jury and not only such portions as defendant deemed most damaging against plaintiff.

Respondent in its brief also made the point that the evidence in any event did not justify a verdict in excess of the amount of the judgment rendered, and therefore any error in the course of the trial was harmless. The facts related above disclose that respondent's evidence justified a verdict in the amount assessed, but that appellant's witnesses placed the damages at about $60,000. Respondent's point is therefore without merit.

Respondent also briefed the question of its liability, contending that the city of St. Louis was not liable in damages since the viaduct was constructed wholly within the limits of Kingshighway. Respondent cited such cases as Zoll v. St. Louis County, 343 Mo. 1031, 124 S. W. (2d) 1168; State ex rel. State Highway Commission v. Bailey, 234 Mo. App. 168, 115 S. W. (2d) 17; Hill-Behan Lumber Co. v. State Highway Commission, 347 Mo. 671, 148 S. W. (2d) 499. In the Zoll case, as well as in the Hill case, this court decided that no liability existed because the suits were against the State, and the court pointed out that the rules existing as to municipalities were not in point. In Missouri municipalities have long been liable in damages for changing the grades of streets. [See 20 C. J. 694, 695, 696, Missouri cases cited in note 61; City of St. Louis v. Wallrath, 293 Mo. 385, 239 S. W. 110.]

For the error indicated the judgment is reversed and the cause remanded. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.